CITY OF NEW HAVEN *vs.* THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The plaintiff's charter provided that the court of common council might, from time to time, order the building, widening or repairing of all bridges crossing railroads in the city, in such manner as in their judgment public convenience might require; and that, in case any railroad company whose road such bridge crossed should neglect to obey such order, the common council might cause the required work to be done at the expense of the city, and that the treasurer of the city might collect the amount of such expense in an action of trespass on the case in his own name. Held, that the word "bridge," as used in the charter, was restricted to the bridge proper to the exclusion of embankments, filling and approaches, unless the immediate approach might be included as part of the bridge proper itself; and that, if such approaches were included, the expense of their repair could not be recovered in an action of assumpsit in the name of the city.

GENERAL ASSUMPSIT; appealed from the judgment of a justice of the peace to the Court of Common Pleas. Facts found and reservation for advice. The case is sufficiently stated in the opinion.

*Doolittle* and *Bennett,* for the plaintiff, cited *English* v. *New Haven & Northampton Co.,* 32 Conn., 240 ; *Town of Tolland*

v. *Town of Willington*, 26 id., 582 ; *Bardwell* v. *Town of Jamaica*, 15 Vt., 438 ; *The King* v. *Inhabitants of the West Riding of York*, 7 East, 588, 595, 599; *Inhabitants of the West Riding of York* v. *The King*, 5 Taunt., 284; *White* v. *Town of Quincy*, 97 Mass., 433 ; *Commonwealth* v. *Town of Deerfield*, 6 Allen, 454 ; *Titcomb* v. *Fitchburg R. R. Co.*, 12 id., 259 ; *Sawyer* v. *Town of Northfield*, 7 Cush., 496 ; *Parker* v. *Boston & Maine R. R. Co.*, 3 id., 116 ; *Inhabitants of Cambridge and Somerville* v. *Charlestown Branch R. R. Co.*, 7 Met., 70 ; *North Staffordshire Railway Co.* v. *Dale*, 8 El. & B., 836.

*Watrous*, for the defendant.

SEYMOUR, J. . The defendant corporation in 1848 constructed its railroad, laying its track in the bed of the old canal. The road crosses Fair street, in New Haven, below the level of the street, at right angles. The bridge across the excavation was built some six feet higher than the old bridge across the canal. The approach to the bridge was graded up, and the sidewalks of Fair street were reconstructed from the bridge to Union street, a distance of one hundred and eleven feet. All which was done by the defendant in pursuance of its charter. In 1849 the act was passed which appears as section 481 of the Act concerning Communities and Corporations. In 1857 the act was passed which now appears as section 33 of the charter of the city. The plaintiff claims that, under the act of 1849, it is the duty of the defendant to keep in repair the highway in Fair street from Union street to the bridge, and that this duty includes the reconstruction and repair of the pavements of the sidewalks of Fair street. The defendant corporation was duly notified of the necessity of reconstructing the pavement, and required to do it, but wholly neglected the requisition. The city thereupon made the needed repairs, and now seeks to recover the expense in an action of assumpsit on the common counts.

Whatever the law may be in respect to the other claims of the plaintiff, we think it clear that this action cannot be sustained.   Until 1857 no mode had been provided by statute for enforcing the duty of railroad companies in regard to such bridges as pertained to them to make and maintain.   The General Assembly in that year passed two statutes on that subject; one being the act which is now the 33d section of the charter of the city of New Haven; the other being what now appears as section 487 of the Act concerning Communities and Corporations.   This last mentioned act provides in substance, that when any railroad company shall neglect to construct any highway or bridge which it is their duty to construct, &c., or shall neglect to keep in good and sufficient repair any bridge, or any embankment, filling or abutment, which it is their duty to maintain, &c., &c., it shall be the duty of the state attorney of any county wherein such neglect exists to make complaint thereof to the Superior Court of the county, &c.

The 33d section of the city charter is as follows:

" Said court of common council shall have supervision over all bridges crossing railroads in said city, and may, from time to time, order the building, widening or repairing of such bridges, in such manner and within such times as in their judgment public convenience may require; and in case any railroad company whose road such bridge crosses shall neglect to obey such order, said common council may cause the required building, widening and repairing to be executed at the expense of said city, and the treasurer of said city may then collect the amount of such expense in an action of trespass on the case, in his own name, against such delinquent company."

Now the word " bridge" may, in certain connections, be so used as to include the embankments and approaches, but in this 33d section of the city charter we think the word is restricted to the bridge proper, to the exclusion of embankments, filling and approaches, unless indeed perhaps the immediate approach may be included as part of the bridge proper itself.

City of New Haven *v.* New York & New Haven R. R. Co.

We thus think because, first, the legislature, in the general act passed in 1857, gives a full and appropriate remedy, by an appeal to the courts, for all neglect of duty by railroad companies in the premises. Embankments and fillings and abutments, as well as bridges themselves, are in direct terms included within the provisions of that act, whereas in the city charter the special duty of the city council is limited to building, widening and repairing bridges, omitting all mention of other structures or appendages. Secondly, the authority of the city council conferred by this 33d section is in its nature special and exceptional, and therefore to be somewhat strictly construed. Third, if the word " bridge" in the city charter were held to include the approaches, still the charter merely authorizes the treasurer of the city to collect the expense of repairs in an action of trespass on the case in his own name. Neither the charter, nor any other statute, warrants a recovery in a common law action of assumpsit in the name of the city; and without the aid of some statute provision it is clear that the present action cannot be maintained.

It will be seen that we thus decide this case against the city, without deciding some important questions which were discussed at the bar regarding the duty of railroad companies under the 481st section of the Act concerning Communities and Corporations. We have felt embarrassed by the difficulties involved in these questions, and one reason why we do not now decide them is, that some further legislation seems to us to be necessary and proper, to make more definite the precise duty intended to be cast upon railroad companies.

And first, it seems important that some provision should be made for determining what shall be deemed approaches to a bridge, in order that the dividing line between the duties of the city or town on the one hand, and of railroad companies on the other, may be distinctly marked. This might be done by direct legislation, or by reference of the question to railroad or to county commissioners, or some other proper tribunal.

And secondly, if, as the plaintiff claims, it is the intention

of the legislature to cast upon railroad companies the burden of ordinary highway repairs upon and over railroad bridges and their approaches, to the entire relief of towns and cities from that burden, it seems desirable that the precise duty should be distinctly declared. The true reason for requiring railroad companies to build and maintain bridges and their approaches, is that the construction and operation of their railroads make such structures necessary, where otherwise they would not be needed. They should therefore, on principles of natural justice, be built and maintained by the railroad companies. All such repairs as from time to time become necessary to the structures, as such, should be at the expense of the railroad companies. But the repair of highways upon and over the approaches to a bridge, if the necessity of such repairs in no way arises from the existence or operation of the road, and if they are such as would be needed independently of the existence of the road, justly remain a charge upon the town or city. It must be conceded that however true this may be in theory, there is in practice a serious difficulty and some inconvenience in making a separation and division of duties between railroad companies and towns. And yet some division seems inevitable, in regard, for instance, to casual obstructions of the highway by nuisances, by snow or by ice, and in regard to other hindrances to public travel of the like nature. The care of such matters naturally devolves upon the local authorities, rather than upon railroad companies, as being within the ordinary line of the duties of the one, and foreign to the ordinary duties of the other. We intimate no opinion upon the question, whether under the existing statute the maintenance and repair of sidewalks and pavements upon the approaches to a railroad bridge pertain to the railroad company or to the local authorities. We hope that, before a case shall arise requiring a decision of that question by the court, the legislature will provide a clear rule on the subject. Under a statute similar to ours, the English courts seem to hold that the entire duty of maintaining the highway and keeping it in repair is with the railroad company, on

the bridge and upon the approaches, as far as the grade of the highway is changed. 8 El. & B., 836.

The Superior Court is advised to render judgment for the defendant.

In this opinion the other judges concurred.