THOMAS HAYES, RESPONDENT, *v.* THE NEW YORK CEN-TRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Highway — Bridge — constructed by railroad company over a crossing — approaches to — maintenance of, by railroad company.*

Where permission is granted, by the commissioners of highways, to a railroad company " to construct and maintain a bridge over a crossing," the acceptance thereof by the company and the construction of a bridge thereunder imposes upon it the duty of maintaining the same in good repair.

The approaches to the bridge, which are necessary to connect the same with the highway, are a part thereof, and the same duty is imposed upon the company as to their repair and maintenance, as exists in regard to the bridge itself.

Such duty exists as well toward the surface of such approaches as toward the foundation and substructure thereof.

APPEAL from a judgment entered in the Albany County Court upon a verdict in favor of the plaintiff.

The action was for injuries received by the plaintiff from being thrown from his wagon, on the north approach of the bridge crossing the defendant's tracks at West Albany. The complaint alleged, and it was proved, that the roadway on this approach was out of order, and this was claimed to have been the cause of the accident.

The defendant denied that it was under any obligation to maintain in repair the road where the accident happened, and alleged that it was part of the highway of the town of Watervliet, and its repair under the exclusive control of the commissioners of highways.

It appeared that the plaintiff was a butcher, and in the habit daily of crossing the bridge built by the defendant at West Albany. That in the dirt road running up to the bridge at the north end, were two holes or gullies, and that the plaintiff's mare stumbling in these, so shook up the wagon that the plaintiff, standing up in it, was thrown out and injured.

For many years previous to the building of the bridge, the highway crossed a large number of the defendant's tracks on a level with them upon the usual planking. The defendant, in the year 1872, obtained a written permission from the commissioners of highways to build a bridge in the following form :

"At a meeting of the commissioners of highways of the town of Watervliet, held at the town clerk's office, in the village of West Troy, on Saturday, the 6th day of April, 1872, the following resolution was adopted :

"*Resolved*, That permission be and the same is hereby given to the New York Central and Hudson River Railroad to construct and maintain a bridge over the crossing at West Albany.

" C. D. MILLER,

" W. M. CURRAN,

"*Commissioners of Highways.*"

The bridge was accordingly constructed and maintained by the defendant. From the necessary elevation given to it, that part of the highway which approached the crossing on the north side, on a level, was sloped up to reach the end of the bridge. It was this portion of the road which was out of repair.

*Samuel Hand*, for the appellant. The fact that the defendant built the bridge under the written consent did not bind the defendant to keep its approaches in repair for all time. But even if its terms were obligatory on it, those terms do not cover any thing but the construction and maintenance of the bridge itself. By the construction of a bridge over the tracks the defendants assumed to maintain that part over the track; *i. e.*, the bridge and nothing more. (*New Haven* v. *N. Y. and N. H. R. R. Co.*, 39 Conn., 128, 132; approved, 42 id., 186.) Where the duty of maintaining the road near the bridge is to be covered, the words "abutments and approaches are always expressly used." (See Connecticut Statute of 1857, cited in above case, at page 131; English Statute, cited in *N. Stafford R. R. Co.* v. *Dale*, 8 El. & Bl., page 841.) Whatever may have been the obligations of the company to the highway commissioners, it is certainly not liable to the plaintiff. The highway commissioners are primarily liable to citizens for defects in the highway (*Hover* v. *Barkhoof*, 44 N. Y.) and the defendant is not. Neither is a party, not primarily liable to repair, liable by virtue of its contract, to any body but the party with whom it contracts. (*Tollit* v. *Sherstone*, 5 M. & W., 283; *Winterbottom* v. *Wright*, 10 id., 112.)

*Parker & Countryman*, for the respondent. The company was bound to "maintain" whatever it was necessary to "construct" in order to "bridge" the crossing. The abutments and lateral embankments were essential to the "construction" of the bridge, and were built accordingly in connection with, and as a part of the bridge; and they are equally essential to "maintain" it as a bridge or a place for crossing over the railroad. (*Sussex* v. *Strader*, 18 N. J. [3 Harr.], 108, 112, 113; *White* v. *Quincy*, 97 Mass., 430, 432, 433; *Titcomb* v. *Fitchburgh R. R. Co.*, 12 Allen, 254, 259; *Watson* v. *Lisbon Bridge*, 14 Maine, 201, 204, 205.) In assuming to "construct and maintain" the bridge, the company undertook to make and keep up a safe raised passage over the "crossing," in place of the previous passage on the same level with the track; and in so doing relieved the town of the burden it thus assumed, of maintaining so much of the road-way as was necessary for that purpose. (*Commonwealth* v. *Deerfield*, 6 Allen, 449, 455; *Sussex*

v. *Strader*, 18 N. J. [3 Harr.], 108, 112–118; *Parker* v. *Boston and Maine R. R. Co.*, 3 Cush., 108, 116; *King* v. *Kent*, 13 East, 220; *King* v. *Lindsay*, 14 id., 317; *Penn. R. R. Co.* v. *Duquesne*, 46 Penn. St., 223, 227.) A bridge built by a citizen or corporation, over a public highway, for his or their exclusive benefit, or even as a substitute for the original highway, when the necessity for the bridge was created by such person or party, must be kept in repair by the party building it. (*Heacock* v. *Sherman*, 14 Wend., 58, 60, 61; *Dygert* v. *Schenck*, 23 id., 446.) Where, in crossing a highway the company has built a bridge for public use, in connection with the highway, it is bound to keep it in repair as long as the highway exists, and the corporation continues to exercise its functions. (*People* v. *Troy and B. R. R. Co.*, 37 How., 427, 429; *People* v. *Cooper*, 6 Hill, 516; *Follett* v. *People*, 12 N. Y., 268, 271, 273.) An abutment to a bridge, as matter of description, is a part of the bridge. (*Bardwell* v. *Jamaica*, 15 Verm., 438; *Tolland* v. *Willington*, 26 Conn., 578; DAYTON, J., in *Sussex* v. *Strader*, 18 N. J. [3 Harr.], 113, 114; GORDON, J., in *Penn* v. *Perry*, Sup. Ct. of Penn., March 1873, 1 N. Y. Week. Dig., 280; WESTON, Ch. J., in *Watson* v. *Lisbon Bridge*, 14 Maine, 204, 205; 13 Coke Rep., 33 and note; *King* v. *York*, 7 East, 588, 595; *Regina* v. *Lincoln*, 8 Ad. & Ellis, 65, 72.) The fact that the town authorities have made repairs on the approaches to the bridge, does not relieve the defendant of its obligation or of its liability for the defects. (*Wilson* v. *Boston*, 117 Mass., 509, 512.) The defendant was liable directly to the plaintiff for the injury he sustained, without reference to its relations to the town authorities, or the liability of the town for the same injury. (*Webster* v. *Hudson River R. R. Co.*, 38 N. Y., 260; *Chapman* v. *New Haven R. R. Co.*, 19 id., 341; *Riker* v. *Freeman*, 11 Am. Law Reg. [N. S.], 693; *Woburn* v. *Henshaw*, 101 Mass., 193; *Heacock* v. *Sherman*, 14 Wend., 58.)

*Per Curiam:*

The defendants raise no question on the appeal except as to their liability to plaintiff for defects in the road.

The bridge (as it is called) was built under a permission given to the defendants " to construct and maintain a bridge over the cross-

ing at West Albany." This permission, acted upon, implies an obligation to maintain.

In some cases where persons have constructed bridges for public use, and the public has practically accepted and used them, it has been held that the public (usually the county) was bound to maintain them. (*Rex* v. *Kent*, 2 M. & S., 513; *Rex* v. *Oxfordshire*, 4 B. & C., 194; *Rex* v. *West Riding*, 5 Bur., 2594.) In this last case however a distinction was noted of a bridge made for the private benefit of him who erected it, citing 1 Rolle's Abridgement, 368.

In the present case the bridge, while a convenience to the public, is also an advantage to the defendants, a saving of expense, risk and interruption. The case is similar therefore to those of *Rex* v. *Kent* (13 East, 220) and *Rex* v. *Lindsey* (14 id., 317). There canal companies which had been authorized to amend and alter such bridges as might hinder navigation, and had erected bridges over fords in the highway, were held liable to keep such bridges in repair. "When the company," said Lord ELLENBOROUGH, "thought proper for their own benefit to alter the highway in the bed of the river, so that the public could no longer have the same benefit of the ford, they were bound to give another passage over the bridge and to keep it for the public."

But the defendants insist that the approaches are no part of the bridge, and that their obligation (if any) does not extend to the approaches. The approaches, say they, are only a part of the highway on a new slope.

But the approaches are a necessary part of the bridge. Could the defendants have been permitted to erect a bridge several feet above the highway, and to construct no means of reaching it? In obtaining permission to build the bridge, and in building it, they must have undertaken to make it accessible — not to block up the highway with a useless structure. What they undertook to construct they should maintain in repair.

The defendants cite *New Haven* v. *N. Y. and N. H. Railroad Co.* (39 Conn., 128) to show that approaches are not part of a bridge. But the court there say that they decide the case on a section of the city charter. They admit that a bridge may in certain connections include embankments and approaches. And of bridges and their

approaches over railroads they remark that they "should, on principles of natural justice, be built and maintained by the railroad companies." And that same court, in *Burrett* v. *N. H.* (42 Conn., 174), speaks of an embankment as a part of the bridge. (See also, *Sussex* v. *Strader*, 18 N. J., 113; *Watson* v. *Lisbon Bridge*, 14 Maine, 204.)

We think, therefore, that the defendants were bound to maintain the approaches as well as the bridge, in the strict sense of the word.

It is further suggested by the defendants that, even if they are liable to maintain the substructure of the approaches, yet that the surface of the roadway, the superstructure (so to call it) should be kept in order by the commissioners of highways; as they would have been obliged to keep it in order before the slope was raised.

In the case of *North Staff. R. W.* v. *Dale* (8 Ellis & Black., 836), a railway company having carried a road over the railway by a bridge, was held bound to keep both bridge and road and the approaches thereto in repair; and such repair was held to include not only the structure of the bridge and the approaches, but the metaling of the road on both. It is true that the statute in that case mentioned approaches. But the case shows that the obligation to keep in repair includes the surface, or roadway, and not merely the superstructure, or support.

We think that the judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOCKES, and BOARDMAN, JJ.

Judgment and order affirmed, with costs.