THE CITY OF MIDDLETOWN vs. THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

Hartford Dist., Jan T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and J. M. HALL, Js.

It is provided by Gen. Statutes, § 3480, (enacted in 1849,) that every railroad company which should locate its road across any highway should cross over or under the highway, and that it should make and maintain such bridges for the highway as the convenience and safety of the public travel upon it should require. An act passed in 1889 (Acts of 1889, ch. 220, § 7,) provides that " it shall be the duty of the railroad companies to maintain and keep in repair all structures erected over their tracks at any highway crossing, but it shall be the duty of the municipality in which the structure is situated to keep in repair the surface of the highway, including planking and other surface material of the highway upon such structure." Held that this act did not repeal by implication the previous act, which still remained in force.

The later act was one of several sections of a statute entitled " an act relating to grade crossings," and the provisions of that section were to be regarded as applying only to structures erected under the provisions of the statute.

[Argued January 16th—decided March 6th, 1893.]

ACTION to recover the expense of re-planking a bridge over the defendant's railroad track in the plaintiff city; brought to the Superior Court in Middlesex County. The following statement of facts was agreed upon by the parties.

The bill of particulars is for labor and materials rendered by the plaintiff in repairing, by re-planking, the roof of the defendant's railroad bridge at Main street in the city of Middletown, which roof is the surface of the highway. The amount of the bill is undisputed. The question is simply one of legal responsibility. The highway was laid out many years prior to 1868. On October 29th, 1869, the petition for the lay-out of the New Haven, Middletown & Willimantic Railroad was accepted and approved by the railroad commissioners according to law, and it was ordered that Main street, and certain other streets, were " to cross over said railroad on over-crossing bridges." The orders of the com-

missioners were soon after complied with. Until the law of 1889, the construction of which is the sole question in this suit, was passed, the railroad company kept the surface in repair. The defendant, it is conceded, is responsible for the obligations of the New Haven, Middletown & Willimantic Railroad Company.

Upon these facts the case was reserved for the advice of this court.

*C. E. Bacon*, for the plaintiff.

*H. C. Robinson*, for the defendant.

J. M. HALL, J. This is an amicable suit brought upon an agreed state of facts, with all questions as to the form of action waived, for the purpose of obtaining a construction of section seven of chapter CCXX of the public acts of 1889.

The claim in suit is for expenses incurred by the plaintiff, amounting to the sum of $265.74, in re-planking a bridge over the Air Line Railroad at Main street in the city of Middletown. The roof of the bridge forms the surface of the highway.

Previous to the act of 1889 the railroad company had always assumed the duty of maintaining and repairing the bridge, but after the passage of that act refused to make further repairs or longer maintain the planking upon the bridge, claiming to have been relieved therefrom by the provisions of the act.

The bridge in question was rendered necessary by the construction of the New Haven, Middletown & Willimantic Railroad in 1869, and was located across an existing highway by the railroad commissioners, who, in approving the lay-out of the railroad, ordered and adjudged that Main street and certain other streets " were to cross over said railroad on over-crossing bridges."

At the time of the construction of the bridge there was a general statute which reads as follows: " Every railroad company which may locate and construct a railroad across

any turnpike, highway or public street, shall construct it so as to cross over or under the said turnpike, highway or street; and for this purpose it may, under the direction of the railroad commissioners, raise or lower said turnpike, highway or street at the said crossing, or change the location thereof, and shall make, keep up and maintain such bridges, abutments, tunnels, arches, excavations, embankments and approaches, as the convenience and safety of the public travel upon said turnpike, highway or street may require; but the railroad commissioners may, upon due notice to said company, and to the selectmen of the town or mayor of the city in which said crossing is situated, authorize and direct such company to construct its railroad at such crossing upon a level with the turnpike, highway or street."

This statute was passed in 1849, appears in all the revisions since that time, was re-enacted with slight amendment in 1883, and now constitutes section 3480 of the General Statutes, revision of 1888.

It will be observed that this statute clearly contemplates that bridges or other structures placed over or upon existing highways by a railroad company in constructing its railroad, shall thereafter be maintained by the railroad corporation. It is a general statute applicable to the original construction of railroads. As early as 1849, when, for the first time, the support of these structures seems to have been a subject of consideration by the legislature, owing doubtless to the rapid construction of railroad lines, the law-making power apparently determined that, as the railroad corporations for their own private gain rendered such structures necessary at highway crossings, justice required that they alone should bear the burden of their maintenance. They therefore adopted that policy, and the general statute reflects the legislative will upon the subject. The legislature evidently intended to relieve all towns wherein such structures are imposed by the necessities of railroad construction, from all liability for their maintenance or repair. We have heretofore approved the justice of this policy. *City of New Haven,* v. *N. York & N. Haven R. R, Co.,* 39 Conn., 132.

Yet, notwithstanding this long settled policy in dealing with this question, the defendant claims that the legislature of 1889 not only inaugurated, but intended to establish, an exactly opposite policy, the effect of which is to relieve the railroads from the expense of hereafter supporting these structures of their own creation, and casting the burden of their support upon the several towns within whose limits they may happen to be located.

As to the power of the legislature to do this we have no question. *English* v. *New Haven & Northampton Co.*, 32 Conn., 240. It is not a question of power, but of intent. Section seven of the act of 1889 relating to grade crossings, upon the language of which the defendant bases its claim to exemption from further statutory liability to maintain the surface of the bridge in question, and of course of all bridges of the same character wherever situated, is as follows :—" It shall be the duty of the railroad companies to maintain and keep in repair all structures erected over their tracks at any highway crossing, but it shall be the duty of the municipality in which the structure is situated to keep in repair the surface of the highway, including planking or other surface material of the highway upon such structure."

Undoubtedly the language of this section, if it stood alone and disconnected from the act of which it forms a part, is sufficiently broad and comprehensive in its terms to sustain the construction claimed for it by the defendant. As an independent statute we should feel bound on general principles to adopt that construction, and to infer an intent on the part of the legislature to change the old policy and establish a new one in regard to the maintenance of structures of the class in question.

There is a plausible force in the defendant's argument, that, inasmuch as the planking of a highway which forms the roof of a railroad bridge and constitutes the whole surface of the highway is under the constant observation of the municipality, which has notice of its defects, and by its use wears it out, therefore the municipality should be charged with the sole care and maintenance of the planking, as it is

for all other parts of the surface of the highway. But whatever of merit there may be in these claims of the defendant, we are bound to infer that they were all duly weighed and considered by the legislature when it decided in 1849 to impose upon the corporations for whose sole benefit and profit these structures were required, the sole burden of their support. The unbroken continuance of this statutory regulation for half a century indicates no change of the legislative judgment upon this subject.

The sole question, therefore, for our decision is, whether the legislature of 1889, in passing the section of the statute in question, intended to repeal section 3480 of the General Statutes, which compels railroads to maintain bridges like the one under consideration.

From a careful examination of the whole question at issue we have reached the conclusion that the legislature did not intend to repeal, and that section seven of the act of 1889 does not repeal, any part of section 3480 of the General Statutes, and will briefly state the reasons that lead us to this conclusion.

1. The title of the act containing the section involved, is " An Act relating to Grade Crossings." While the title is not controlling, yet it is significant, and may aid in showing what was in the mind of the legislature. *United States* v. *Palmer*, 3 Wheat., 610. To arrive at the true meaning of a statute it is necessary to take a broad general view of the whole act, so as to get an exact conception of its aim, scope and object. Endlich on Interpretation of Statutes, § 27. The true meaning of a statute is discovered not merely from its words, but also by comparison with other parts of the act, by reference to previous legislation upon the same subject, and by ascertaining the cause and occasion of the passage of the act, and the purpose intended to be accomplished thereby.

By reference to previous legislation it will be found that as early as 1883 the legislature, moved doubtless by the frequent recurrence of frightful accidents at grade crossings passed several enactments to provide methods of increasing

public safety at such highway crossings. In 1884, and later, additional legislation ensued, and finally in 1889 the legislature undertook still further and more radical legislation looking to the gradual abolition of all grade crossings. The whole purpose and scope of the act of 1889 seems to be to facilitate the extinction of grade crossings. It is apparently directed wholly to this deadly menace to public safety. That part of section one which defines the proper allegations for a petition to the railroad commissioners under the provisions of the act, shows its scope and purpose. It is as follows :—" The selectmen of any town, the mayor and common council of any city, the warden and burgesses of any borough, within which a highway crosses or is crossed by a railroad, or the directors of any railroad company whose road crosses or is crossed by a highway, may bring their petition in writing to the railroad commissioners, therein alleging that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, the closing of a highway crossing and the substitution of another therefor not at grade, or the removal of obstructions to the sight at such crossings, and praying that the same may be ordered," etc. The other sections of the act confer additional powers upon the railroad commissioners and provide a method of procedure to carry into effect all such orders as the commissioners may make incidental to the separation of grades at highway crossings. Section seven forms a harmonious and essential part of this act, and was intended to apply, as we believe, only to structures erected pursuant to its provisions.

2. Any other construction of this section of the statute involves a departure from a rule of construction firmly imbedded in our law, and whose preservation we consider of the utmost importance, and that is, that all laws should be held to operate prospectively unless their language unmistakably gives them a retrospective operation. " Retroaction should never be allowed to a statute unless it is required by express command of the legislature or by an unavoidable implication arising from the necessity of adopting such a

construction in order to give full effect to all its provisions." *Smith* v. *Lyon*, 44 Conn., 178. See also *Goshen* v. *Stonington*, 4 Conn., 209; *Thames Mfg. Co.* v. *Lathrop*, 7 id., 550; *Brewster* v. *McCall's Devisees*, 15 id., 290; *Goodsell's Appeal from Probate*, 55 id., 171, 180; *Rowen* v. *N. York, N. Haven & Hartford R. R. Co.*, 59 id., 367. There is nothing in the statute that hints at the past in express terms, and certainly nothing authorizing us to infer that a retrospective application was intended by the legislature. The presumption is that all statutes are to operate prospectively. *Plumb* v. *Sawyer*, 21 Conn., 355.

3. There is no repeal in terms of any part of section 3480 of the General Statutes contained in the act of 1889. If section 3480 is repealed it must be repealed by implication. Here again we encounter another rule of construction fortified by abundant authorities, that opposes the defendant's claim. Repeals by implication are not favored, and the repugnancy between two statutes must be very clear to warrant a court in holding that the later in time repeals the other when it does not in terms purport to do so. Cooley's Const. Limitations, 182; Endlich's Interpretation of Statutes, § 210; *Hartford Bridge Co.* v. *East Hartford*, 16 Conn., 175.

There is nothing necessarily repugnant in section seven of the act under consideration to the provisions of section 3480. Both statutes can have full effect if allowed to stand. Section 3480 applies solely to structures established at the original lay-out and construction of the railway; section seven, to bridges and structures necessitated by the elimination of grade crossings under the act of 1889. "If both statutes can be reconciled they must stand and have a concurrent operation." 1 Swift's Digest, 12; *Goodman* v. *Jewett*, 24 Conn., 589; *Kallahan* v. *Osborne*, 37 id., 490.

4. A consideration of the effects and consequences of giving the retroactive effect claimed by the defendant for the section in question convinces us of the correctness of the construction we have given to this statute. We cannot believe that the legislature deliberately intended to lift from

the railroad corporations of this state the duty of maintaining these structures, built for their own convenience, and which for nearly half a century they have been required by law to support at a very large annual outlay, and cast this burden upon the towns wherein these structures are located, many of which are far less able to bear the expense of their support than some of the railroad companies to whom the structures belong. It seems to the last degree improbable that the legislature would thus indirectly impose a tax upon the people of so many towns without indicating such intention with unmistakable clearness. If we are wrong in our conclusion the legislature will promptly correct our error.

For the foregoing reasons we are satisfied that section seven of the act of 1889 does not affect section 3480 of the General Statutes, and that the whole act should be construed as intended only to take the place of sections 3483 and 3489 of the General Statutes, which it expressly repeals in terms.

We therefore advise judgment for the plaintiff.

In this opinion the other judges concurred.