COMMONWEALTH OF KENTUCKY *v.* LOUISVILLE BRIDGE Co. *et al.*

*(Circuit Court, D. Kentucky.   April 5, 1890.)*

1. REMOVAL OF CAUSES—PLEADING.
   Where defendant's petition for removal of a cause distinctly alleges that a federal question is raised, his answer, filed after a motion to remand. and setting out more in detail the nature of the defense, may properly be considered on that motion.

2. SAME—BOND—PENALTY.
   Whether or not a removal bond should have no fixed penalty, a bond otherwise valid is properly accepted where the penalty is sufficient to cover the costs likely to accrue.

3. SAME—FEDERAL QUESTION.
   A proceeding to exclude a bridge company from the use of a franchise to operate railroad tracks in a public street does not raise a federal question, though such tracks lead to its bridge, built under Acts Cong. July 14, 1862, and Feb. 17, 1865, authorizing the construction of a railroad bridge over the Ohio river, and declaring that it "shall be a lawful structure, and shall be recognized and known as a post-route," as those acts do not attempt to give the right to the use of the street as an approach.

4. SAME—CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS.
   A proceeding by a state to forfeit a franchise cannot be removed to the federal courts on the ground that it impairs the obligations of a contract; the prohibition of the constitution being that "no state shall pass any law" impairing the obligation of contracts.

In Equity.   On motion to remand.
*P. W. Hardin* and *Muir, Heyman & Muir*, for the Commonwealth.
*Chas. H. Gibson* and *Barnett, Miller & Barnett*, for defendants.

BARR, J.   The commonwealth of Kentucky brought this suit in the Jefferson court of common pleas; and it has been removed here, on the petition of the defendants, upon the alleged ground that the controversy is one arising under the constitution and laws of the United States.   The plaintiff moves to remand the case to the state court, and insists that it does not raise any question under the constitution or laws of the United States; and it is also insisted that the bonds executed in the state court are not sufficient, and the execution of a proper bond is jurisdictional.

The suit is a statutory one under the Code of Practice of this state, which authorizes such a proceeding in lieu of a writ of *quo warranto*, or an information in the nature of a *quo warranto*, and is for the purpose of having the defendants excluded from the use of the franchise to operate a double-track steam railroad in and over Fourteenth street, in this city, from Main street to Maple street, and to recover damages for the wrongful use of said franchise heretofore.   The plaintiff alleges in the petition that defendants, in co-operation with each other, have usurped the use of Fourteenth street from Main street to Maple street, a distance of about one mile, and have used the same, by operating a double-track railroad, with steam, for many years, and are still operating said road over and through said street, for the transportation of passengers and freight, and are now, and have been for more than 10 years, charging tolls and compensation therefor illegally, and that they are exercising said franchise without warrant or right from the plaintiff, and without any lawful authority whatsoever.   The petition for removal alleges that there is a fed-

eral question involved in the controversy, because (1) the plaintiff is violating the obligation of a contract which she has entered into with the Louisville Bridge Company; (2) that she is attempting to impair or destroy rights which the bridge company hold under acts of congress approved July 14, 1862, and February 17, 1865.

After the plaintiff entered this motion to remand the case to the state court, the defendants tendered an answer to the original petition of the plaintiff, and asks that it be filed and considered as part of the record on this motion. As the removal petition alleges distinctly that this suit raises a federal question, under the constitution and laws of the United States, I think it proper that the answer, which sets out more in detail the nature of the defense, should be considered and read on this motion.

The bonds which were executed by the defendants, and accepted by the state court, are each in the penalty of $500, and are in conformity with the provisions of the statute in every respect, unless a penalty is improper. It is claimed that the third section of the act of March 3, 1875, as amended by the act of March 3, 1887, provides for a bond unlimited in extent, and one not to be limited by a fixed penalty, and therefore these bonds are fatally defective, and, as the execution of a proper bond is jurisdictional, this case should be remanded for that reason. Whether the execution of a valid and proper bond under this act, and the act of March 3, 1875, is jurisdictional, has been much discussed; and the circuit courts have differed in opinion. See *Burdick* v. *Hale*, 7 Biss. 96; *Torrey* v. *Locomotive Works*, 14 Blatchf. 269; *Deford* v. *Mehaffy*, 13 Fed. Rep. 481; *Harris* v. *Railroad Co.*, 18 Fed. Rep. 833. But that question does not arise in this case, as I think the bonds which were executed by defendants, and accepted by the state court, are valid bonds to the extent of the penalty, and the penalties are sufficient to cover the cost likely to accrue in this case. It may be that a bond without a penalty would be good under the statute; but the act does not prohibit a bond with a penalty, although it does prescribe the obligations under which the obligor must come. I therefore think the state court properly accepted these bonds with a penalty, as the obligations conformed to the provisions of the act. Both Field and Bump give forms of removal bonds with a penalty. See Field, Fed. Courts, 767; Bump, Fed. Proc. 909.

The facts which appear from the record, and that are material to the determination of the present motion, are these, viz.: The Louisville Bridge Company was incorporated by the commonwealth of Kentucky, and authorized to build a bridge across the Ohio river from some convenient point in the city of Louisville to a point opposite in the state of Indiana, and was authorized to acquire by purchase and condemnation the necessary land to build said bridge, and the necessary avenues thereto, and land for the purpose of any necessary building, etc. The company organized and built the present bridge under the charter granted by the commonwealth of Kentucky, and have accepted the provisions of the acts of congress approved July 14, 1862, and February 17, 1865, and built the bridge, in accordance with the provisions of said

acts, more than 15 years ago. Fourteenth street is a public street in the city of Louisville, 60 feet in width, and about 1 mile in length from Main street to Maple street, but extends beyond both of said streets. The bridge company, and those claiming under said company, have occupied and used said street for a double-track railroad, and have operated said railroad for the transportation of passengers and freight coming and going over said bridge, and for other freights, for more than 15 years, and have charged compensation for the passengers and freights thus transported. The general council of the city of Louisville, by an ordinance approved March 14, 1872, authorized said bridge company to thus use said street, so far as the city could lawfully authorize it. These tracks over and through Fourteenth street from Main street to Maple street are laid on the ordinary grade of the street. These tracks are not a part of the bridge structure, but are the connecting link between the tracks of the Louisville & Nashville Railroad Company and those of the bridge company at Main street. This track through Fourteenth street is the only existing railroad approach by which the Louisville & Nashville Railroad Company can reach the bridge from the south, and is indispensable to the present use of the Louisville bridge for the transportation of passengers and freight north and south. But other approaches can now, and could at the time of the construction of the bridge, have been made. At that time the Louisville & Nashville Railroad and the Jeffersonville, Madison & Indianapolis Railroad were the only railroads running to Louisville from the south and the north, respectively. The act of congress approved February 17, 1865, (13 St. at Large, 431,) amends the act of July 14, 1862, so as "to authorize the Louisville and Nashville Railroad Company and the Jeffersonville Railroad Company, stockholders in the Louisville Bridge Company, to construct a railroad bridge over the Ohio river at the head of the falls of the Ohio, subject to all the provisions of said act" of July 14, 1862, and provides for the kind of bridge to be constructed. The second section provides "that the bridge erected under the provisions of this act shall be a lawful structure, and shall be recognized and known as a post-route."

The fifth section of the act of 1862 is the only part material to the present inquiry, and that enacts—

"That any bridge or bridges erected under the provisions of this act shall be lawful structures, and shall be recognized and known as post-routes, upon which, also, no higher charge shall be made for the transmission over same of the mails, the troops, and munitions of war of the United States than the rate per mile which the company or companies erecting such bridge may from time to time receive on the balance of their line or lines for such services." 12 St. at Large, 570.

The act of 1865 did not authorize the Louisville Bridge Company to construct this bridge, but the authority to construct was given to the two railroad companies. This is not material, since the act did not grant either corporate franchises or property rights on either shore of the Ohio river. It may be assumed that, if the bridge was constructed according to the requirements of the act, whether by the two railroad companies

as stockholders of the bridge company, or by the Louisville Bridge Company in its corporate capacity, the bridge was to become a lawful structure and a post-route. But congress did not not confer upon these railroad companies or upon the Louisville bridge corporate franchises, or any right to or interest in the land on either shore of the river. The right to be a corporation, and the rights and franchises incident to a corporation, and such as were necessary to construct and use such a bridge as required by the act, was not given, or intended to be given; neither was the act intended to give those building the bridge the right to condemn property, or purchase the property, necessary for the land approaches to this bridge, or for its piers. It, being declared a lawful structure, ceased to be, in law, an obstruction to the navigation of the Ohio river, whatever the fact might be. This gave authority to sink and build the necessary piers in the bed of the river, and on the shore of the river, if necessary, to have the bridge constructed the height required by the act. It may be assumed, for the purposes of this inquiry, that these acts not only authorized the construction of the necessary shore piers, and the construction of a part of the bridge upon them, but that it would authorize the construction of trestle-work for the same purpose. But such authority would give no right to or interest in the land upon which such piers and trestle-work were built. These, being property rights, remained as if congress had not acted at all. It may be argued, while this may be true as to property rights of individuals and corporations, that it is not true as to public highways, streets, etc., which are under the control of the state, or municipalities created by the state, and that as to these congress, under its authority to regulate commerce among the states, and establish post-roads, may exercise a control which is supreme, and could authorize their use without the consent of the state in which they lay. The conclusive answer to this suggestion is that, whatever may be the power of congress in and over public streets and highways in the states, in this instance it has not attempted to exercise any authority over Fourteenth street, or any other street in Louisville. The acts declare that the bridge shall be "a lawful structure and a post-route." It must be a structure, to be within the meaning of these acts. This is the ordinary meaning of "bridge," as given both by Webster and Worcester. If congress intended to give the authority to the bridge company to run railroad trains over and through Fourteenth street, or any other street in the city of Louisville, it should have been in unmistakable language; but, however this may be, it seems to me to be impossible to include Fourteenth street as part of the bridge which congress authorized. This street, to use the language of the charter of the bridge company, is only an "avenue" to the bridge, or approach to it by rail from the south. Indeed, I do not understand that the defendants have alleged this street to be a part of the bridge or structure, but only it is a necessary approach to the bridge. The language used in these acts is quite common in acts of congress, and has been construed by the supreme court several times, and in no instance have the words "lawful structure and a post-route," as applied to a bridge, been held to include, or have they

been claimed to have included, an existing street or public highway over land as part of the bridge because it led directly to the bridge. This language was used in the *Wheeling Bridge Case*, 13 How. 519, 18 How. 421, 460; in the *Clinton Bridge Case*, 10 Wall. 454; in the *Brooklyn Bridge Case*, (*Miller* v. *Mayor*, etc.,) 109 U. S. 385, 3 Sup. Ct. Rep. 228; *Missouri Bridge Case*, (*Hannibal & St. J. R. Co.* v. *Missouri River Packet Co.*,) 125 U. S. 260, 8 Sup. Ct. Rep. 874,—and in none of them is there an intimation that more than the bridge—the actual structure—was authorized and declared a lawful structure.   Congress, in an act entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," enacted, among other enactments—

"That any telegraph company now organized, or which may hereafter be organized, under the laws of any state in this Union, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been, or may hereafter be, declared such by act of congress, and over, under, or across the navigable streams or waters of the United States."   14 St. at Large, 221.

The supreme court, after declaring this was a constitutional exercise of power by congress under the commercial clause of the constitution, and after declaring an act of the Florida legislature, which gave an exclusive right to one of its own telegraph companies in two counties of the state, void and of no effect, uses this pertinent language, after quoting the language of the act:

"There is nothing to indicate an intention of limiting the effect of the words employed: and they are, therefore, to be given their natural and ordinary signification.   Read in this way, the grant evidently extends to the public domain, the military and post roads, and the navigable waters, of the United States.   These are all within the dominion of the national government to the extent of the national powers, and are therefore subject to legitimate congressional regulation.   No question arises as to the authority of congress to provide for the appropriation of private property to the uses of the telegraph, for no such attempt has been made.   The use of public property alone is granted.   If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner.   No compulsory proceedings are authorized.   State sovereignty under the constitution is not interfered with.   Only national privileges are granted."   *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 12.

In same case in 2 Woods, 646, Judge WOODS says:

"It is not supposed, nor is it claimed by defendant, that the act of congress gives a telegraph company the right to occupy the right of way owned by railroad companies without compensation."

When this case arose, all railroads in the United States had been declared to have been post-roads by congress.   I will not attempt to define or consider the extent of the power of congress under the commerical clause of the constitution, and that to establish post-roads.   It is sufficient, and decisive of this branch of the case, if the fact be that congress has not given, or attempted to give, to the defendants, or either of them,

the use of Fourteenth street, from Main street to Maple street, as a railroad approach or avenue to the bridge.   It may be that the defendants have a legal right to continue the use of said street as at present used; but, whether or not this be so,—and upon this I express no opinion,—this right cannot depend in any degree upon the construction of these acts of congress, as it has not legislated, or attempted to legislate, upon the subject.   I do not understand that the fact that all railroads have been declared post-roads is urged as giving this court jurisdiction of the present controversy.

It is, however, contended that the commonwealth of Kentucky is seeking by this proceeding to abrogate a contract made with the Louisville Bridge Company, and it is thereby violating the federal constitution.   Art. 1, § 10.   This section prohibits a state from passing any law impairing the obligation of contracts.   The supreme court say in a recent case that—

"In order to come within the provision of the constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state.   The prohibition is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals."   *New Orleans Water-Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 30, 8 Sup. Ct. Rep. 741.

Here there has been no legislative action, and the uttermost that can be claimed is that the plaintiff is seeking through her courts to have the defendants deprived of a franchise which they claim to be theirs under a contract with plaintiff.

I have not overlooked the case of *Railroad Co.* v. *Mississippi*, 102 U. S. 135, which settles the right of defendants to a removal to this court, if this suit presented a real controversy or dispute as to the construction and effect of an act of congress and this notwithstanding the plaintiff is a state of this Union.   In that case the real controversy was as to the obstruction of a navigable river (Pearl river) by a railroad bridge over it.   The plaintiff relied upon an act of congress passed March 1, 1817, which declared "that the Mississippi river, and the navigable rivers and waters leading into the same, or into the Gulf of Mexico, shall be common highways, and forever free, as well to the inhabitants of said state as to other citizens of the United States."   The defendant also relied in its answer upon another act of congress, (March, 1868,) which, it claimed, authorized the construction of the bridge complained of by plaintiff as obstructing the free navigation of Pearl river.   The suit necessarily involved the construction of the laws of the United States; and, indeed, the rights of defendant depended upon the act of congress.   Besides, the subject-matter of the controversy was national, *i. e.*, the navigation of Pearl river, and its alleged obstruction.   Here the subject-matter of the controversy is a franchise in and over a street in the city of Louisville, which does not depend upon any right given by congress, but upon the state laws.

In determining this motion to remand, I am necessarily compelled to determine whether the suit arises under the constitution or laws of the United States. This jurisdictional question should be determined now, although, if I had serious doubts upon the subject, it would perhaps be my duty to retain the case, and determine the question after all the evidence is in. But, as I have no doubts upon this question, it is my duty to remand the case to the state court from whence it came. It can be heard there, and in the supreme court of the state; and, if against the defendants, they still have the right to have the judgment of the supreme court of the United States as to whether the suit is one arising under the laws or constitution of the United States. The case should be remanded; and it is so ordered.