HENRY SEYFER, ADMINISTRATOR, V. COUNTY OF OTOE.

FILED DECEMBER 3, 1902. NO. 12,318.

Commissioner's opinion, Department No. 2.

1. **Evidence: VERDICT.** In a case where there is some competent evidence tending to establish every fact in issue, the verdict will not be set aside on the ground that it is not sustained by the evidence, unless such verdict is clearly wrong.

2. **Bridge: MUNICIPALITY: PUBLIC USE: CONSTRUCTION: ORDINARY BUSINESS USE: WHAT MAY BE ANTICIPATED.** In constructing and maintaining a bridge for public use, a municipality is not limited in its duty by the ordinary business use of the structure, but is required to provide for what may be fairly anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where it is situated.

3. ———: ———: ———: ———: ———: ———: ACTION UNDER LORD CAMPBELL'S ACT: QUESTIONS FOR JURY. In an action against a county by the administrator of the estate of a deceased person to recover damages alleged to have been caused by the breaking down of a bridge while the deceased was attempting to cross it with a steam traction engine and separator, it is for the jury to determine whether or not the bridge was properly constructed and maintained, and whether the use which the deceased was making of it, was unusual and extraordinary, and such as the county was not bound to anticipate.

4. **Instructions: NEGLIGENCE PER SE: GROUP OF CIRCUMSTANCES: INSTRUCTION AS TO LEGAL EFFECT: EXISTENCE OF FACTS FOR JURY.** Ordinarily it is error for the court to instruct the jury that a circumstance, or a group of circumstances, as to which there has been evidence on the trial, amounts to negligence *per se;* but where such fact or group of facts, if established, amount in law to negligence, the court, having left the question as to the existence of such facts to the jury, may state their legal effect.

5. **Contributory Negligence: DECLARATION OF DECEASED.** The declarations of a deceased person made to a third party, as to his knowledge of the condition of a bridge, which gave way while he was attempting to cross it and caused his death, before the accident occurred, may be properly received in evidence as tending to establish contributory negligence.

ERROR from the district court for Otoe county. Action in the nature of case, under Lord Campbell's act, against

a county for not properly constructing, repairing and maintaining a bridge. Tried below before JESSEN, J. Verdict and judgment for defendant. Plaintiff brings error. *Affirmed.*

*John C. Watson* and *John V. Morgan* (*Robert Ryan,* of counsel), for plaintiff in error.

*W. W. Wilson, County Attorney,* and *D. T. Hayden, contra.*

BARNES, C.

On the 6th day of October, 1899, John E. Neu, now deceased, was moving a steam engine and threshing machine over a public road of Otoe county. A separator was attached to the traction engine by what is known as a "sawed-off tongue," about six or seven feet long. Upon the engine was the deceased, and another party, who assisted him in running it, and a third man was upon the separator. The whole outfit was moved by this traction engine. On the said road or highway, was a bridge sixteen or eighteen feet in length, spanning a ravine or dry run. Neu attempted to cross this bridge with the outfit above described. A portion of the bridge gave way and Neu was precipitated to the bottom of the ravine, and received injuries from which he died in a few days thereafter. The bridge broke down as the front wheels of the separator were coming onto it, and just before the engine passed off from it. The plaintiff herein was appointed administrator of Neu's estate, and brought a suit against the county for damages, alleging that the bridge, by the wrongful act, neglect and fault of the county, became and was weak, insufficient and out of repair, and dangerous for the public to cross and travel upon; that said bridge gave way and broke down by reason of the wrongful act of the county to properly construct, maintain and repair the same. The defendant answered, in substance, that the bridge was in good repair, and had always been safe for ordinary loads,

for such loads as were intended to pass upon it, and for the purposes for which it was intended to be used; that the deceased was careless, negligent and reckless in propelling his engine and separator upon the bridge, and by so doing he placed upon said bridge an unusually heavy load, and that he thereby carelessly and negligently contributed to his own injury; that he was careless and negligent and contributed to his own injury in attempting to cross said bridge without first detaching the separator that was attached to said engine, and that said deceased went onto said bridge with said engine and separator without using the necessary precaution, and through the want of care and precaution caused said bridge to be broken down, thereby carelessly and negligently contributing to his own injury. The reply was a general denial. Upon these issues the cause was tried to a jury and a verdict rendered for the defendant. Plaintiff thereupon prosecuted error to this court.

1. Plaintiff contends that the verdict is not sustained by the evidence, and is contrary to law. It appears from the bill of exceptions that the bridge in question was constructed less than five years before the accident occurred. The manner of its construction was detailed, and the person who built it gave evidence as to the material used therein. It appears from his evidence that it was sixteen or eighteen feet in length, and was composed of nine white oak stringers, upon which the floor was laid. Eight of these stringers were 2x12 white oak plank; and the other one, being the middle stringer, was 3x12, and of the same material. The planking or floor of the bridge, was also composed of oak, and was held in place by pine binders at the ends, which was the only pine used in its construction. The stringers rested upon timbers supported by red cedar and white oak piles. It thus appears that the bridge was properly constructed out of good material, and there is no evidence to the contrary. There was some dispute as to the condition of the stringers at the time the accident occurred. One or two witnesses, who made a very hasty and

imperfect examination of them, testified that they were brash, and seemed to break square off; that there was rotten wood on the outside of them; but no attempt was made by them to detail the amount or extent thereof. Several other·witnesses testified that the stringers were in good condition, and a portion of one of them, which was broken, was brought into court and exhibited to the jury. The evidence further disclosed that the life and usefulness of such a bridge ranges from eight to twelve years. So it would seem that the bridge having been built less than five years, must have been in a fairly good state of repair; and the jury, under the evidence, were warranted in so finding. The evidence further disclosed that the bridge had been in constant use, and that farmers in that neighborhood had hauled loads over it, as one witness puts it, just as large as he could haul. Another witness testified that shortly before the accident he hauled a load consisting of fifty-five bushels of shelled corn over the bridge. It further appeared that the traction engine in question weighed 11,500 pounds without any water in its boiler or fuel in its tender; that eighty per cent. of the weight of the engine was on its back wheels; that it carried in its boiler 220 gallons of water, and had in its tank 64 gallons. The separator which was attached to it weighed 5,500 pounds. It therefore appears that the traction engine, with the two men riding thereon at the time, weighed something over 14,000 pounds; that the weight of the separator and weighing attachment was 5,500 pounds; making the total weight of the load something over 19,000 pounds, or nearly ten tons. It is shown that the front wheels of the separator would come onto the bridge before the engine passed off from it. This would require the bridge to sustain a weight consisting of nearly five times that of an ordinary load, such as is usually hauled over country roads. It was further shown that these threshing outfits carried plank with them for the purpose of planking and thus reinforcing the strength of such bridges whenever they attempted to cross them, and that deceased had such plank

on the load with him at the time he attempted to cross the bridge in question; that he ran his engine and separator onto the bridge without examining it to ascertain its condition, and without planking it, notwithstanding he had the material with him for that purpose. Two witnesses testified that the deceased had previously crossed the bridge with this threshing outfit, and that he told them that the last time he crossed it before the accident occurred he heard the stringers crack, and he was lucky to get over all right, or words to that effect; and there was evidence that some of the stringers appeared to have been previously cracked or strained. It appears from this summary statement that the verdict of the jury was sustained by the evidence, and we are unable to say that it was clearly wrong.

2. It is contended that the court erred in giving instruction No. 12, which is as follows: "The court instructs the jury that in maintaining a bridge for public use, the county is not limited in its duty by the ordinary business use of the structure, nor is it bound to provide for the support of extraordinary or unreasonably heavy loads, but it is only required to provide what may be fairly anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where the bridge is situated. Whether or not the load which the deceased, John E. Neu, drove on the bridge in question was an extraordinary or unreasonably heavy load, is a question for you to determine from the evidence before you." The contention is that it was error for the court to leave the question as to whether or not the load was unreasonable or an extraordinary one to the jury, because it is claimed the bridge should have been built in anticipation of just such a load.

The instruction in question seems to have been taken from the case of *Anderson v. City of St. Cloud*, 81 N. W. Rep. [Minn.], 746. The rule laid down in that case is as follows: "In maintaining a bridge for public use,

a municipality is not limited in its duty by the ordinary business use of the structure, but is required to provide for what may be fairly anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where it is situated."

In the case of *Yordy v. Marshall County,* 45 N. W. Rep. [Ia.], 1042, a case similar to the one at bar, the court held that "in an action against a county for an injury to plaintiff's team and threshing outfit, caused by the breaking of a bridge while attempting to drive across, it is for the jury to determine whether the use which plaintiff was making of the bridge was unusual and extraordinary, and such as the county was not bound to anticipate; and it is error for the court to decide this question, and to direct a verdict in the county's favor." This being the rule, it follows that an instruction taking that question from the jury by stating, as a matter of law, that the load was not an unusual or extraordinary one, would have been erroneous. This was one of the questions which the court was bound to submit to the jury, and the instruction in question under which it was submitted, states the law as laid down by a majority of the cases, and is supported by the greatest number and the best considered decisions.

3. It is contended that the court erred in refusing to give instruction No. 9. By this instruction the jury were told that it was not negligence on the part of the plaintiff's intestate to attempt to cross the bridge with the engine and separator in question. This instruction would have withdrawn from the jury the question as to whether or not the engine and separator was such an extraordinary load that under the circumstances the deceased should have exercised some precaution in attempting to cross the bridge in question with it. It is in direct conflict with the instruction given upon that point, and was properly refused.

4. It is contended that the court erred in giving instruction No. 6, which is as follows:

"If you find from the evidence that the bridge in question was in an unsafe condition, and if you further find that the deceased, John E. Neu, knew of such unsafe condition, or had reason to know that the stringers on said bridge were cracked or broken by a previous strain, then you are instructed that the deceased would be negligent in not examining said bridge before he drove upon it."

The objection urged to this instruction is that the court stated to the jury a circumstance, or a group of circumstances, as to which there had been evidence on the trial, and instructed that such fact or group of facts amounted to negligence *per se.* It is true that this court has held that "at most, the jury should duly be instructed that such circumstances, if established by a preponderance of the evidence, are properly to be considered in determining the existence of negligence." This doctrine was first announced in the case of *Missouri P. R. Co. v. Baier,* 37 Nebr., 235, and has been followed and approved in a long line of cases decided since that time; and there can be no question now as to the correctness of this rule. If the instruction in question falls within this rule then the court erred in giving it; but if, on the other hand, the fact or group of facts mentioned therein, if true, would constitute negligence *per se,* then the instruction was properly given. It has often been held by this court that one about to cross a railroad track must look and listen to ascertain whether a train is approaching or not, and if, failing to do so, he is injured, such conduct is contributory negligence,—in other words, negligence *per se,*—and he can not recover. *Omaha & R. V. R. Co. v. Talbot,* 48 Nebr., 627; *Guthrie v. Missouri P. R. Co.,* 51 Nebr., 746; *Brady v. Chicago, St. P., M. & O. R. Co.,* 59 Nebr., 233; *Chicago, B. & Q. R. Co. v. Pollard,* 53 Nebr., 730. If the deceased, in passing over the bridge in question with his outfit the last time before the accident occurred, heard the stringers crack, as some evidence contained in the record would seem to indicate, and therefore knew the bridge had become strained or weakened, a reasonable regard for his own safety required him to examine

its condition and plank it, if necessary, before attempting to pass over it, he having the means at hand to do so; and if he steamed upon it without taking any precaution whatever, it could scarcely be contended that he was not guilty of contributory negligence as a matter of law. Where a certain fact or group of facts, if established, leaves no room for men of ordinary intelligence to differ as to the legal effect thereof, it is proper to instruct the jury what such legal effect is. Where the facts are such that reasonable men must draw the same conclusions from them, the question of negligence is one of law for the court. *Omaha St. R. Co. v. Craig,* 39 Nebr., 601; *Grand T. R. Co. v. Ives,* 144 U. S., 408; *Brady v Chicago, St. P., M. & O. R. Co., supra; Guthrie v. Missouri P. R. Co., supra; Chicago, B. & Q. R. Co. v. Pollard, supra.* It will be observed by an examination of the instruction complained of that the determination of the facts was properly left to the jury. We think the legal effect of such facts, if established, was negligence. We are aware that this question is a close one, but it seems to us, under the circumstances, that the court did not err in giving this instruction.

5. Lastly, it is contended that the court erred in receiving the evidence of M. W. Balfour and L. Balfour as to the statements or declarations of the deceased in relation to the condition of the bridge, and what he discovered or heard when passing over it with his threshing outfit the last time before the accident occurred. This action was brought under the provisions of chapter 21 of the Compiled Statutes,* which provides (section 1) : "That whenever the death of a person shall be caused by the wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued,

* Section 5198, Cobbey's Annotated Statutes.

shall be liable to an action for damages, notwithstanding the death of the person injured," etc. It is plain, under this statute, that whatever would have been a defense, had the deceased survived the accident and brought this suit to recover damages for injuries sustained, is a defense against an action brought by the administrator of his estate. Contributory negligence in such cases is a good defense. Any competent evidence tending to establish the fact of such contributory negligence on the part of the deceased was properly received. If the deceased, with his outfit, steamed upon the bridge in question, with knowledge that it had been weakened and injured or strained by reason of his having previously passed over it, without taking the precaution to examine it, without planking it, or suitably preparing it for his passage, there can be no doubt of the fact that he was guilty of contributory negligence. The testimony of these witnesses as to his declarations regarding that matter, would tend to establish the defense of contributory negligence, and for that reason it was properly received. It was properly received for the further reason that it was a declaration made by the deceased against the interest of his legal representative. 1 Greenleaf, Evidence, secs. 147-149. *Hosford v. Hosford,* 42 N. W. Rep. [Minn.], 1018.

It appears from an examination of the record that the cause was fairly tried, and was submitted to the jury under proper instructions; that the evidence is sufficient to sustain the verdict; and we recommend that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.