## CITY OF CENTRAL CITY V. JOHN MARQUIS ET AL.

FILED DECEMBER 6, 1905. No. 13,882.

1. Repeals by implication are not favored, and, where two acts are simply repugnant, they should be so construed, if possible, that the latter may not operate as a repeal of the former.

2. Bridge Repairs: STATUTES: REPEAL. Sections 102a and 102b, chapter 78, Compiled Statutes 1903, being chapter 72, laws 1887, do not operate as a repeal of that portion of section 77, article I, chapter 14, Compiled Statutes 1903, pertaining to the liability of counties, cities and villages for the construction and repair of bridges.

3. The term "bridges," in said section 77, does not include the approaches thereto.

4. Evidence examined, and *held* sufficient to sustain a finding of constructive notice of the defective condition of a bridge.

5. Instruction: NOTICE. In an action to recover for personal injuries resulting from the defective condition of a bridge, it is not error to instruct the jury that actual notice to the municipality is not necessary, where "the defects are of such a nature or have existed for such a length of time that they might by the exercise of ordinary diligence have been discovered and repaired."

6. Bridges: PRESUMPTION. A party attempting to cross a bridge which is a part of a highway in the absence of notice to the contrary, or facts sufficient to put him on inquiry, has a right to assume that it is reasonably safe for the accommodation of the public at large in the various occupations pursued in the locality where the bridge is situated.

7. An expert witness will not be permitted to usurp the functions of the jury.

ERROR to the district court for Merrick county: JAMES G. REEDER, JUDGE. *Affirmed.*

*W. T. Thompson*, for plaintiff in error.

*George W. Ayres, Patterson & Patterson* and *John C. Martin*, contra.

ALBERT, C.

This action was brought against Merrick county and the city of Central City, a city of the second class of said county, to recover for personal injuries sustained by the plaintiff by falling through a bridge within the city, across a stream which crosses a section line road extending through said city. The pleadings and the evidence show that, while the plaintiff was attempting to cross the bridge with a traction engine and water tank, the stringers of the bridge broke, and he, with the engine, was precipitated to the ground, whereby he sustained serious *bodily injuries. It is alleged in the petition, in effect, that the injuries sustained by the plaintiff were the proximate result of the negligent construction of the bridge, and the negligent omission of the defendants to keep and maintain the same in a reasonably safe condition. As to the county, the case went off on a general demurrer. As to the city, there was a trial to a jury which resulted in a verdict and judgment for the plaintiff. The city brings error.

One of the questions presented by the record is, which of the two defendants is charged with the duty of making and keeping the bridge in question reasonably safe for public travel. The county is under township organization, and the plaintiff contends that the bridge is less than 60 feet in length, and that the duty of making and keeping it in repair devolves upon the city by virtue of section 77, Article I, chapter 14, Compiled Statutes, 1903 (Ann. St. 8756), which, so far as is material at present, is as follows:

"The city council or board of trustees shall have the care, supervision, and control of all public highways, bridges, streets, alleys, public squares and commons within the city or village, and shall cause the same to be kept open and in repair, and free from nuisances. * * * All public bridges exceeding sixty feet in length, over any stream, crossing a state or county highway, shall be constructed and kept in repair by the county: *Provided*, that when any city or village has constructed a bridge over sixty feet span,

on any county or state highway within their corporate limits, and have incurred a debt for the same, then the treasurer of the county in which said bridge is located shall pay to the treasurer of said city or village seventy-five per cent. of all bridge taxes collected in said city or village until said debt is fully paid and interest upon the same."

On the other hand, the city contends that the section quoted, so far as it relates to the duty of cities and villages with respect to bridges, was impliedly repealed by chapter 72, laws 1887, entitled "An act to provide for the building, maintaining and repairing certain bridges in counties under township organization," and which now constitutes sections 102a and 102b, chapter 78, Compiled Statutes, 1903 (Ann. St. 6130, 6131). The following is the act in full:

"Section 102a. That in counties under township organization the expense of building, maintaining and repairing bridges on public roads over streams shall be borne exclusively by the counties within which such bridges are located.

"Section 102b. The county board of every such county shall build, maintain and repair every such bridge, and make prompt and adequate provision for the payment of the expense thereof."

The history of this act is a matter of common knowledge. It will be observed that it relates exclusively to counties under township organization. Before its enactment, subject to the provision of section 77, *supra*, counties not under township organization were charged with the duty in question, while in counties under township organization such duty devolved exclusively upon the townships. *Whitcomb v. Reed*, 24 Neb. 50. It was felt that the law, as it then stood, imposed too great a burden on the townships, and it was to relieve them of this burden, and to place the two classes of counties on equal terms with respect to bridges over streams, that the act of 1887 was enacted. As it relates only to counties under township organization, to give it the effect claimed for it by the city would relieve

cities and villages in such county of the duty of construct-
ing and maintaining bridges over streams, but would leave
that duty still resting upon cities and villages in other
counties. It seems unlikely that the legislature intended
thus to discriminate in favor of the cities and villages of
one class of counties and against those of another. Be-
sides, repeal by implication is not favored. *Dawson
County v. Clark,* 58 Neb. 756; *Albert v. Twohig,* 35 Neb.
563. When two acts are simply repugnant they should, if
possible, be so construed that the latter may not operate
as a repeal of the former by implication. *People v. Wes-
ton,* 3 Neb. 312. The act of 1887 is complete in itself.
There is nothing in it to indicate that it was intended to
repeal any portion of section 77. It refers exclusively to
"bridges on public roads over streams." In *Nebraska
Telephone Co. v. Western Independent L. D. T. Co.,* 68 Neb.
772, it was held that the term public roads in a statute
giving telegraph and telephone companies a right of way
along the public roads, does not include the streets and
alleys of an incorporated city or village. In the same
opinion the following language was approved by the
court: "Whatever may be the usage in other jurisdictions,
we think it safe to say that in this state the term 'public
roads' is commonly understood and recognized to apply
exclusively to rural highways." From the language of
the act itself, its obvious purpose and history, and the
fact that for 18 years section 77 has stood unchallenged
as a part of the law of the state, and has been so recog-
nized and acted upon, notwithstanding the act of 1887,
we are satisfied that the word "roads," in the act of 1887,
should be taken in the sense in which it is commonly
used and understood, namely, as including only rural
highways, and not that portion of a highway lying within
the limits of a city or village.

But the city insists that the bridge is over 60 feet in
length, and consequently, even under section 77, the duty
in question belongs to the county. It is not claimed that
structure itself exceeds 60 feet in length, but the city

contends that the term bridge includes the approaches, and that the bridge in question, including the approaches, is more than 60 feet long.    Whether the approaches are included within the term bridge depends upon the context, and the circumstances under which the term is used.    *Nims v. Boone County,* 66 Ia. 272; *Phillips v. Town of East Haven,* 44 Conn. 25; *City of New Haven v. New York & N. H. R. Co.,* 39 Conn. 128; *New Haven and Fairfield Counties v. Milford,* 64 Conn. 568, *Commonwealth of Kentucky v. Louisville Bridge Co.,* 42 Fed. 241.    By the section in question, bridges were divided into two classes, one of which was to be constructed and maintained by counties, the other by cities and villages; those over 60 feet in length falling within the former, and those 60 feet or under within the latter. It is fair to presume that the legislature did not overlook the importance of adopting a rule of classification whereby the class to which a given bridge belongs, and the liability for its construction and maintenance, could be readily ascertained and definitely determined.    If by the term "bridge" was meant merely the bridge proper, the length would afford a reasonably certain and readily applied test; but, if was meant the bridge proper and the approaches, it is doubtful if two minds would ever agree on the exact length of the bridge, and, in many cases, whether the duty of maintaining it devolves upon the county or whether upon the city or village would become a fruitful source of contention.    Again, in cities and villages, the approaches to bridges generally come under regulations relating to sidewalks, paving, curbing, and other matters of a purely local nature.    It does not seem likely that the legislature intended to transfer the supervision of these matters to the county.    What seems to us stronger reasons for holding that it was not intended to include the approaches within the term bridge are to be found in the language of the section itself.    In that portion which classifies the bridges, the term is used without qualification.    In that portion which provides

for the relief of cities and villages for expenses theretofore incurred in the construction of bridges over 60 feet in length, and for which they were then indebted, the test is "over 60 feet span." It seems to us from a study of the entire section that the legislature clearly intended that the liability of municipalities for the construction and repair of bridges should be determined by the same test as their right to relief for expenses incurred for bridges already constructed, namely, the length of the bridge proper or span. Another thing that inclines us to this view is that in ordinary speech the term "bridge" is seldom used or understood to include the approaches, which, frequently, are hardly distinguishable from the highway leading to the structure.

It is insisted that the verdict is not sustained by sufficient evidence. A considerable portion of the argument on this point is disposed of by what has already been said. But there remains the question of the sufficiency of the evidence to sustain a finding that the defendant had notice, either actual or constructive, of the defects in the bridge. The defendant contends that the defects relied upon were latent and not discoverable from ordinary tests and examination, and, for that reason, the failure to discover such defects was not negligence, and their existence for whatsoever time will not support a finding of constructive notice. There is no evidence of actual notice, save so far as the location of the bridge, and the time the defects had existed and their nature, taken in connection with the defendant's duty in the premises, may be regarded as circumstantial evidence tending to show actual notice. But it is the contention of the plaintiff that the stringers supporting the planking of the bridge had been weakened by decay, and that two of them had been cracked about one-third of their width, some six years before the accident. As to the decay of the stringers, fragments of them were introduced in evidence, and these fragments certainly bear out the theory that they had been seriously weakened by lapse of time and natural decay. That they

had been cracked as claimed, and that the cracks in the stringers had been noticed by casual observers, in one instance some years before the accident, is conclusively established by the evidence. In the face of these facts, we do not think it can be fairly said that a finding of constructive notice is not sustained by sufficient evidence.

At the request of the plaintiff, the court gave the following instruction: "The jury are instructed that it is not necessary that a city, whose duty it is to keep and maintain a bridge in repair, have actual notice of defects, if such defects are of such a nature or have existed for such length of time that they might, by the exercise of ordinary diligence, have been discovered and repaired. In such case notice may be presumed." One criticism of this instruction is that it allows no interval between the discovery of the defects and the accident, in which to make repairs. The answer to this is that by this paragraph the court did not undertake to instruct the jury further than as to what facts and circumstances would warrant a presumption of notice. Besides the language, "that they might, by the exercise of ordinary diligence, have been discovered and repaired," implies that the defendant was allowed a reasonable time after discovering the defects to repair them. Another criticism of this instruction is based on the clause, "if such defects are of such a nature or have existed," etc. The defendant contends that the two members of this clause should have been connected by "and" instead of "or." This criticism, we think, is without substantial merit. Under this instruction, no matter what the nature of the defects, nor what length of time they had existed, the city was required to exercise only reasonable diligence. That being true, they were not required to discover latent defects, nor such as had existed for so short a period that, in the exercise of ordinary diligence, they could not have been discovered. But whether they existed for a long or short period, or whatever their nature, there can be no doubt, under the uniform holdings of the courts with respect to constructive

notice in cases of this kind, that if, by the exercise of ordinary diligence, the defendant could have discovered and repaired the defects before the accident occurred, the city is chargeable with such notice. The instruction certainly goes no further than that. Complaint is made of other instructions given by the court, but all complaints on that ground are disposed of, we think, by what has been said on the question of the liability of the defendant to maintain the bridge, and it is not necessary to go over the ground a second time.

It is also insisted that the court erred in refusing to give certain instructions tendered by the defendant. Some of these are eliminated by what has already been said, while others cover substantially the same ground as that covered by instructions given, consequently, the refusal to give them was not error. As to the remainder, no assignment of error in the petition is predicated on their rejection, hence the rulings in that behalf are not reviewable.

Contributory negligence was one of the defenses relied upon. To establish this defense an expert witness was produced, and, after objections to several hypothetical questions had been sustained, the defendant offered to prove by the witness, among other things, "that to pass over a bridge, whose framework is about from 45 to 48 feet in length, by steam, without planking the same, with a traction engine, with a tender attached to said engine, and water tank, containing about 200 pounds of coal and about 6 barrels of water, with two men on said engine at the time, was not an ordinarily safe method of passing over said bridge, and that extra precautions were necessary to be taken in the way of planking such bridge or bridges, and in propelling the engine across the same by means of pulleys or other force than steam applied to said engine." An objection to this offer was sustained and we think properly. The evidence shows conclusively that the use of traction engines on the highways in that locality had been common for some years. Therefore the

use of the bridge in moving such engines was one which might have been fairly anticipated by the defendant and for which it was bound to provide. *Anderson v. City of St. Cloud*, 79 Minn. 88. This case is cited with approval in *Seyfer v. Otoe County*, 66 Neb. 566. That being true, unless the plaintiff had knowledge of the unsafe condition of the bridge, he had a right to assume that the defendant had discharged its duty, and that the bridge was safe for the "accommodation of the public at large in the various occupations, which from time to time may be pursued in the locality where it is situated," and was not charged with the duty of "planking" it. Besides, one of the questions for the jury was whether the plaintiff was making an unusual or extraordinary use of the bridge at the time of the accident. *Seyfer v. Otoe County, supra.* Had the evidence been received, the expert would have passed on that question. That an expert witness will not be permitted to usurp the functions of the jury is elementary. 2 Jones, Evidence, sec. 374.

We discover no error in this record, and we recommend that the judgment be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.