JOSEPH KOVARIK, APPELLANT, v. SALINE COUNTY, APPELLEE.

FILED APRIL 9, 1910. No. 15,813.

1. **Bridges:** DUTY IN MAINTAINING. "In constructing and maintaining a bridge for public use, a municipality is not limited in its duty by the ordinary business use of the structure, but is required to provide for what may be fairly anticipated for the proper ac-

commodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where it is situated." *Seyfer v. County of Otoe,* 66 Neb. 566.

2. ———: PRESUMPTION. "A party attempting to cross a bridge which is a part of a highway in the absence of notice to the contrary, or facts sufficient to put him on inquiry, has a right to assume that it is reasonably safe for the accommodation of the public at large in the various occupations pursued in the locality where the bridge is situated." *City of Central City v. Marquis,* 75 Neb. 233.

3. ———: ———. The sufficiency and state of repair of bridges upon public highways referred to in section 117, ch. 78, Comp. St. 1909, must be applied to the uses to which a bridge is ordinarily exposed prior to and at the time of the accident by which it may be claimed injury to person or property was suffered. It should be sufficient to meet the present ordinary necessities of the public.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. *Reversed.*

*Bartos & Bartos* and *Hall, Woods & Pound,* for appellant.

*Ralph D. Brown* and *Glenn N. Venrick, contra.*

REESE, C. J.

This action was instituted in the district court for Saline county for the purpose of recovering the value of a traction steam engine and threshing machine which were practically destroyed by the breaking and falling of a bridge across Blue river in said county. A bridge, known as a "King Iron Bridge", was constructed across said river in 1891, the same being composed of material taken from another location where it had served as a similar bridge from 1876 until its removal to the location where the alleged accident occurred. The suit is for the value of the property destroyed by and in the wreck. The defendant filed its answer traversing the averments of the petition in all matters not admitted, and presented a counterclaim for the damages arising from the injury to the bridge in question. Suitable replies were filed, and the

issues were fully made up. It is not deemed necessary to further notice the pleadings, as they appear to have been well and properly formed and contain all necessary issues for a case of the kind. A jury trial was had which resulted in a verdict in favor of defendant upon the demand of plaintiff and in favor of plaintiff upon the cross-demand of defendant, which was, in effect, that neither party was guilty of negligence or had any cause of action against the other. Plaintiff appeals.

A large volume of evidence is presented in the bill of exceptions and which is conflicting in many important particulars. It is disclosed that plaintiff was the owner of a 16 horse power traction engine and threshing machine of the combined weight of from 25,000 to 30,000 pounds, and that he attempted to cross the bridge in question with his outfit, when the bridge went down, destroying the machinery—or nearly so—and injuring the bridge structure to such an extent as to render many parts of it practically worthless. The span of the bridge was 90 feet and was what is known as a "rainbow truss." Plaintiff testified that he pulled up on to the edge of the bridge far enough to cause the front wheels of the thresher to pass over the caps of the bridge at that end to prevent it from running backward off the approach, then slackened the speed of the engine and uncoupled the thresher by drawing the pin which held it to the engine, for the purpose of leaving the thresher to be drawn across by a team after the engine had passed over, when the bridge gave way, precipitating him and the engine to the river some 18 or 20 feet below, followed by the thresher. This appears to have been the custom of the owners of threshing outfits where the strength and stability of bridges were not known to be ample, and where the approach was so steep as to render the pulling of the thresher on to the bridge with a team impracticable. It is claimed by the county that the circumstances and conditions appearing after the wreck, taken in connection with statements alleged to have been made by plaintiff after the accident, show that

the thresher was not uncoupled from the engine, and that plaintiff attempted to cross with the two machines coupled together, and thereby negligently imposed a greater strain upon the bridge than it could support. There was evidence tending to show that, at the time the bridge was originally constructed in 1876 and removed in 1891, the method of transportation of heavy loads over highways and bridges of the county was with lighter appliances than during the year 1907, when the accident occurred; that there were heavier engines and threshers in use in 1907 than plaintiff's, some engines being of the capacity of 26 horse power. It is contended by defendant that if the bridge was of sufficient strength in 1891 to support the heaviest loads then in common use, and that as repaired in 1906 it was continued to be of that strength and capacity, the county had performed its whole duty to the public, and could not be held for accidents occurring by reason of the common use of heavier loads, so increased after the original construction of the bridge, and in support of that theory refers to the evidence which, with practical unanimity, shows that at that time (1876 and 1891) the traction engines in common use were 6, 8 and 10 horse power, and therefore much lighter than those which came into common use at a later date. As to the strength and capacity of the bridge to sustain loads, in addition to its own weight, with safety, there was also a conflict. One engineer, who examined it soon after the accident and took measurements of many of its parts, condemned the bridge in very positive terms, while other witnesses who had had experience as contractors and builders, and who showed expert knowledge, deemed it sufficient.

Complaint is made by plaintiff of the eighth instruction given to the jury by the court upon its own motion: It is as follows: "A county cannot be held as an insurer of those who have occasion to use a county bridge. If the defect in a bridge from which injury and damages occur to the person using it is a latent defect, not discernible

from the ordinary tests and examinations usually made to ascertain its condition, and if those charged with such examinations have not been negligent in their duty in that regard, the county cannot be held liable for damages caused by such latent and undiscovered defects. Nor are counties bound, when constructing bridges, to anticipate uses not then known and existing, which are not within the ordinary experience at the time of the building of the bridge. So, in repairing said bridges, the counties have performed their whole legal duty when they have put them in as good condition of strength and soundness as will make them as secure as new bridges of the same kind and plan."

The principal objection is made to the closing portion of the instruction, wherein the jury were told: "Nor are counties bound, when constructing bridges, to anticipate uses not then known and existing, which are not within the ordinary experience at the time of the building of the bridge. So, in repairing said bridges, the counties have performed their whole legal duty when they have put them in as good condition of strength and soundness as will make them as secure as new bridges of the same kind and plan." There can be no reasonable doubt but that the obligation of a county in connection with its bridges is a continuing, and, in some degree, a shifting one. Section 117, ch. 78, Comp. St. 1909, provides: "If special damage happens to any person, his team, carriage, or other property by means of *insufficiency, or want of* repairs of a highway or bridge, which the county or counties are liable to keep in repair, the person sustaining the damage may recover in a case against the county", etc. This section clearly imposes upon the counties of the state the duty of maintaining the sufficiency, as well as the repairs, of their bridges; and in *Seyfer v. County of Otoe*, 66 Neb. 566, it was held, and is stated in the syllabus, that, "in constructing and maintaining a bridge for public use, a municipality is not limited in its duty by the ordinary business use of the structure, but is required to provide for

what may be fairly anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where it is situated." In *City of Central City v. Marquis,* 75 Neb. 233, at pages 240, 241, the commissioner in writing the opinion says: "The evidence shows conclusively that the use of traction engines on the highways in that locality had been common for some years. Therefore the use of the bridge in moving such engines was one which might have been fairly anticipated by the defendant and for which it was bound to provide."

The sufficiency and state of repair referred to in the section, as above quoted, must, of necessity, refer to the uses to which a bridge is exposed at and about the time of the happening of the accident. Any other conclusion would admit of the construction of a bridge sufficient for present necessities, but which would be clearly inadequate 50 or 75 years thereafter. The evidence tended to show that the usual "life" of a bridge of the class to which the one in question belonged is from 50 to 75 years. The plan of this bridge was adopted in 1876, and the iron framework constructed at that time. At that date the country in Saline county was but slightly developed, and was, to all intents and purposes, a new country. In the more than 30 years intervening between that time and the date of the accident in 1907, the country had been brought under a high state of cultivation, and the burdens imposed upon bridges on the public highways have fully kept pace with improvements and the changes in the method of transportation. At the time of the original construction of the bridge the appliances used in transportation are shown to have been comparatively light. The fact that the bridge was removed in 1891 and placed in the position where the accident occurred, or repaired in 1906, can make no difference as to defendant's liability. The whole question as to the sufficiency of the bridge to meet the usual and ordinary demands of the public must be measured by what those demands were at and prior to

the date of its fall.  It is true that the county cannot be held liable for the negligence of persons injured, or whose property may be damaged or destroyed, or for accidents occurring from unusual and unreasonable burdens upon its bridges, but its duties and obligations must keep pace with the reasonable necessities of the public.  If it is true, as claimed by plaintiff, that engines and threshing outfits of the size and weight of his were in common use and were of necessity removed from place to place over and along the highways and across streams and bridges, the burden was upon the county to provide suitable highways and bridges to the same extent as if they had been in common use at the time the bridge was constructed or repaired.  The fact that a bridge of a certain design and plan was at one time suitable and sufficient for the demands of the public is not conclusive proof that it will continue so, notwithstanding the change of requirements of the public at a later date.  The evidence tended to show a change in the size and weight of traction engines in common use some years before the accident occurred.  The obligation of the county to maintain the "sufficiency" of the bridge would have to be measured thereby, in the absence of negligence on the part of the person suffering damage.  In the syllabus to *City of Central City v. Marquis, supra,* it is said:  "A party attempting to cross a bridge which is a part of a highway in the absence of notice to the contrary, or facts sufficient to put him on inquiry, has the right to assume that it is reasonably safe for the accommodation of the public at large in the various occupations pursued in the locality where the bridge is situated."  We are of the opinion that the court erred in giving the part of the instruction to which reference is made.  If the contention of plaintiff is correct, that engines of the size and weight of his were in common use at and for any reasonable time before the accident, it was the duty of the county to see to it that the bridge was capable of meeting any ordinary demand.  We deem this a reasonable rule, and, while contrary decisions are cited

by defendant, it is well supported by authority. *Anderson v. City of St. Cloud*, 79 Minn. 88; *Yordy v. Marshall County*, 80 Ia. 405; *Schlensig v. Monona County*, 126 Ia. 625; *Perry v. Clarke County*, 120 Ia. 96; *Commissioners v. Coffman*, 60 Ohio St. 527. We do not mean by this to announce an inflexible rule that it is the duty of the county to provide safe passage for extraordinary heavy loads at each and all of its bridges across streams. It might be, in counties where bridge burdens are heavy, as with defendant, that with safe bridges at reasonable distances apart, and suitable notices of warning conspicuously posted at others giving their capacity when not considered sufficient for loads exceeding a certain weight, the requirements of the law might be met. That question, however, is not involved in this case and is not decided.

As we have seen, the bridge was repaired to some extent in 1906. Plaintiff requested the court to give the following instruction to the jury: "In maintaining a bridge for public use, the county is not limited in its duty by the ordinary business use of the structure, nor is it bound to provide for the support of extraordinary or unreasonably heavy loads; but it is only required to provide for what may be fairly anticipated for the proper accommodation of the public at large, in the various occupations which from time to time may be pursued in the locality where the bridge is situated. Whether or not the county should have fairly anticipated the use of traction engines in the community at the time it was repaired is for you to determine from the evidence before you." This instruction was refused. We think it a fair statement of the law and should have been given; at least, it was as favorable to defendant as it was in anywise entitled to or could reasonably have expected.

A number of other alleged errors are presented by plainitff, but it is believed that they need not be considered as they will probably not arise upon another trial.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.