CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT, V. FRED O. BOETTCHER, APPELLEE.

49 N. W. 2d 690

Filed November 9, 1951. No. 32999.

*Johnson & Stuart,* for appellant.

*Baskins & Baskins,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

Plaintiff brought this action for damages to one of the bridges across its canal allegedly caused by defendant driving a truck weighing in excess of the posted capacity of the bridge upon and over the bridge. Defendant answered, denied generally, and alleged that the bridge broke down because of its deteriorated condition and not through any fault of his. Trial was had to a jury resulting in a verdict for defendant. Plaintiff appeals. We reverse the judgment of the trial court and remand the cause with directions to enter a judgment for the plaintiff.

At the close of all the evidence plaintiff moved for a directed verdict. The motion was overruled. Plaintiff later moved to set aside the verdict and enter judgment in accord with its motion for a directed verdict. That motion was denied. Plaintiff's first assignment of error is that the trial court erred in refusing to grant these two motions.

There is no material dispute in the evidence as to those matters involved in determining this assignment.

The bridge involved was built in 1939 in a north-south direction across plaintiff's canal. The land to the south of the canal is pasture. There was a county road to the north of the bridge, to the south was a trail road. The bridge was used largely by the occupants of the land to the south for local use and moving of cattle to and from the pasture lands.

The bridge was a wooden structure, 60 feet in length. It was supported by abutments at each end and by three bents consisting of four wooden piling in each bent. It had signs at each end showing a capacity of 10 tons. When built it had an actual load capacity much greater than the posted capacity.

Plaintiff was under contract with Dawson County to maintain, repair, and replace the bridge when replacement became necessary.

It was customary for ranchers to haul cattle to and

from their pasture lands in trucks described as pickups, straight trucks, and semi-trucks. The straight trucks when empty weighed 4 to 5 tons and, when loaded, 8 to 9 tons. The semi-trucks when empty weighed 10 tons or more and, when loaded, 20 tons or more.

The damage to the bridge here occurred on November 16, 1948. On that day in going for a load of cattle defendant crossed the bridge going south with a semi-truck weighing 11 tons and with an over-all length of 50 feet. He returned across the bridge with a load of cattle, the gross weight then being approximately 20 tons. The cattle were unloaded and he again went across the bridge with his empty truck. These three trips across the bridge were without mishap. Defendant then loaded his truck so that the approximate gross weight was 20 tons and with that load drove across the bridge.

Defendant testified that he did not see the load-limit markings but knew that the bridge was of the 10-ton type; that he knew the "kind of shape" those bridges were in; "* * * that is why I went kind of fast"; and that he went across at 15 to 20 miles an hour. As defendant went across, the four piling of the south bent gave way, and the bridge at that point went down, the rear wheels and end of the truck going down also. Defendant drove his truck on across without damage to truck or cargo.

The evidence is that the piling had been in the bridge 9 years and had deteriorated so that three of them had an effective diameter of 6 to 8 inches, i. e., the diameter or heart of the piling that had not weathered away, and one had less than 6 inches. The expert evidence is that the bridge was ample to carry the posted 10-ton load and actually had a conservative load capacity of over 22 tons; that an overload or excess of 10 tons put a lateral and increased stress on the bents; and that repeated overloading would weaken the fibers at the ground line.

As above indicated, the bridge that day had sustained on two occasions a load of 11 tons and on one occasion a load of 20 tons.

The bridge was repaired at a cost of $357.64. Plaintiff sued for that amount.

The substantial question presented is what rule of law applies to fix defendant's liability, if any?

Plaintiff pleaded and relied upon the provisions of section 39-506, R. S. 1943, which require a highway commissioner to post upon each bridge a sign showing the carrying capacity or weight the bridge will carry or bear, and that part of section 39-722(4), R. S. Supp., 1949, which provides: "If any truck shall cross a bridge with a total gross load in excess of the posted capacity of said bridge and, as a result of such crossing, any damage results to the bridge, the owner of such truck shall be responsible for all of such damage."

Defendant relies upon section 39-834, R. S. 1943, and certain of our decisions to which reference will be made. The provision of the act is: "If special damage happens to any person, his team, carriage or other property by means of insufficiency or want of repair of a highway or bridge, which the county or counties are liable to keep in repair, the person sustaining the damage may recover in an action against the county * * *."

In Seyfer v. Otoe County, 66 Neb. 566, 92 N. W. 756, we stated the rule that "In constructing and maintaining a bridge for public use, a municipality is not limited in its duty by the ordinary business use of the structure, but is required to provide for what may be fairly anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where it is situated."

Defendant further relies upon that part of the opinion in City of Central City v. Marquis, 75 Neb. 233, 106 N. W. 221, which is as follows: "The evidence shows conclusively that the use of traction engines on the highways in that locality had been common for some years.

Therefore the use of the bridge in moving such engines was one which might have been fairly anticipated by the defendant and for which it was bound to provide. Anderson v. City of St. Cloud, 79 Minn. 88. This case is cited with approval in Seyfer v. Otoe County, 66 Neb. 566. That being true, unless the plaintiff had knowledge of the unsafe condition of the bridge, he had a right to assume that the defendant had discharged its duty, and that the bridge was safe for the 'accommodation of the public at large in the various occupations, which from time to time may be pursued in the locality where it is situated,' and was not charged with the duty of 'planking' it. Besides, one of the questions for the jury was whether the plaintiff was making an unusual or extraordinary use of the bridge at the time of the accident." For continuity we here point out that we there also stated the rule that "A party attempting to cross a bridge which is a part of a highway in the absence of notice to the contrary, or facts sufficient to put him on inquiry, has a right to assume that it is reasonably safe for the accommodation of the public at large in the various occupations pursued in the locality where the bridge is situated."

In Kovarik v. Saline County, 86 Neb. 440, 125 N. W. 1082, 136 Am. S. R. 704, 27 L. R. A. N. S. 832, we made direct reference to the section of the statute relied upon by the defendant, and held that it clearly imposed the duty upon the counties of the state of maintaining the sufficiency, as well as the repairs, of their bridges. We there followed the above quoted rules from Seyfer v. Otoe County, *supra,* and City of Central City v. Marquis, *supra.* We further stated this rule: "The sufficiency and state of repair of bridges upon public highways referred to in section 117, ch. 78, Comp. St. 1909, must be applied to the uses to which a bridge is ordinarily exposed prior to and at the time of the accident by which it may be claimed injury to person or property

was suffered. It should be sufficient to meet the present ordinary necessities of the public."

Based on these authorities defendant contends that it was the duty of the county to keep its bridges in reasonable repair and to build such bridges as will carry the customary traffic over those bridges; that plaintiff has assumed these duties and obligations as to this bridge; and that defendant is within those rules and not liable for the damages following the customary use which he made of this bridge.

That situation has been changed.

In the course of the opinion in Kovarik v. Saline County, *supra,* we said: "We do not mean by this to announce an inflexible rule that it is the duty of the county to provide safe passage for extraordinary heavy loads at each and all of its bridges across streams. It might be, in counties where bridge burdens are heavy, as with defendant, that with safe bridges at reasonable distances apart, and suitable notices of warning conspicuously posted at others giving their capacity when not considered sufficient for loads exceeding a certain weight, the requirements of the law might be met. That question, however, is not involved in this case and is not decided." That opinion was filed April 9, 1910.

The 1911 Legislature provided with reference to the county highway commissioner that "* * * he shall firmly post or attach upon each bridge in a conspicuous place a board or metal sign showing the carrying capacity or weight which the bridge will carry or bear and any person driving across or going upon any such bridge with a greater weight than shown by such sign, shall recover no damages because of any accident or injury which may happen to him upon such bridge * * *." Laws 1911, c. 116, § 5, p. 406. That provision is now section 39-506, R. S. 1943. The same Legislature by an act approved the same day provided: "It is hereby made the duty of the county boards or other officials having charge of highways in the various counties when-

ever any bridge or culvert is constructed, re-constructed or overhauled, to use in floors of the same planking not less than three inches in thickness, when wood is employed, and to so construct or repair the same, whatever material is employed, that it will sustain a load of not less than 20 tons." Laws 1911, c. 113, § 1, p. 395.

The 1915 Legislature amended this act so as to provide that new wooden bridges should sustain a concentrated moving load of not less than 15 tons and all other new bridges not less than 20 tons, and provided that the county board should mark or cause to be marked all new or repaired bridges with signs showing their capacity. Laws 1915, c. 58, § 1, p. 152.

The 1917 Legislature again amended the act to provide, among other things, that it be a misdemeanor for officials to fail to perform their duties as required by the act. Laws 1917, c. 62, § 1, p. 162.

The act was again amended in 1923 so as to provide that new bridges should sustain a concentrated moving load of not less than 10 tons on some bridges and not less than 15 tons on others, and the requirement as to the posting of notices was changed accordingly. Laws 1923, c. 47, § 1, p. 165. These provisions, with subsequent amendments not material here, are now sections 39-803 and 39-803.01, R. S. Supp., 1949.

At this point we call attention to our decision in Higgins v. Garfield County, 107 Neb. 482, 186 N. W. 347. The action was brought under the provisions of section 39-834, R. S. 1943, relied upon by the defendant here. We there carefully pointed out that the bridge involved was not marked as to its carrying capacity and that had it been so marked, a different rule would apply. We there pointed out also that the liability of the county was statutory. See, also, Sharp v. Chicago, B. & Q. R. R. Co., 110 Neb. 34, 193 N. W. 150.

It will thus be seen that the Legislature, subsequent to the decisions upon which defendant relies, materially changed both the duties and the liabilities of a county.

This legislation above discussed and these decisions deal with the liability of the county to individuals. Section 39-722(4), R. S. Supp., 1949, deals with the liability of one who uses a bridge in violation of its provisions to respond in damages. It appears to have been a new provision in 1933. Laws 1933, c. 105, § 4, p. 426. The act creates a liability absolute in its terms when the facts set out therein are shown to have happened. State v. Yellow Baggage & Transfer Co., 211 Wis. 391, 247 N. W. 310. Here it is shown without dispute that a truck owned and driven by defendant crossed the bridge carrying a load in excess of the posted capacity. That damage followed as a result of such crossing is the only conclusion that can be sustained by the evidence. The amount of the damages resulting is not in dispute. The act makes the owner liable for the damage. The trial court erred in not sustaining the motion for a directed verdict.

The judgment of the trial court is reversed and the cause remanded with directions to enter a judgment for the plaintiff as prayed.

REVERSED AND REMANDED WITH DIRECTIONS.