JOSEPH L. FRANEK, APPELLANT, V. BUTLER COUNTY, APPELLEE.

FILED APRIL 27, 1934. No. 28917.

J. J. Krajicek, Phillip A. Tomek and John G. Tomek, for appellant.

J. C. Hranac, Coufal & Shaw and Ray E. Sabata, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

GOSS, C. J.

At the conclusion of plaintiff's evidence the court directed a verdict for defendant. From the judgment of dismissal thereon plaintiff appealed.

Plaintiff sued for damages for personal injuries sustained when the automobile in which he was riding ran into a ditch across a road in Butler county. The road was under repairs and the ditch was caused by the removal of a culvert without the space occupied by it having yet been filled in. There was ample evidence to submit to a jury (in a proper case), subject to the element of his contributory negligence, that plaintiff suffered injuries and that the proximate cause was the condition of the road.

Plaintiff pleaded and defendant admitted that the county is under township organization. Township organization is provided for in sections 26-201 to 26-299, Comp. St. 1929,

and affords supervisors (instead of county commissioners), who divide the county into townships. For the purposes of this suit it does not seem necessary to go further into the contents of the chapter. The effect of the judgment below is to decide that a county under township organization is not liable for a defect in a road (or bridge) unless the county is liable to keep it in repair, and that this was not a road of that kind.

Section 39-832, Comp. St. 1929, makes a county liable for special damages caused by "insufficiency, or want of repairs of a highway or bridge, which the county or counties are liable to keep in repair." Section 39-227, Comp. St. 1929, provides for the selection and designation, by the board of county commissioners or supervisors, of such laid out and platted public roads as are to be considered "county roads." Section 39-229, Comp. St. 1929, provides that the total mileage of such county roads should not exceed 25 per cent. of the total mileage of all the public highways within the county, and "all county roads designated in accordance with the preceding sections of this act shall be maintained at the expense of the county." Section 39-1206, Comp. St. 1929, provides that the expense of building, maintaining and repairing bridges on public roads "over streams" shall be borne exclusively by the county.

The culvert was removed and about 30 or 40 feet farther south it was supplanted by another bridge or culvert which was to perform the same office, but the grading had not been done to make the change effective. A detour along the roadway passed to the east of the location of the old culvert and the new bridge or culvert. The evidence shows that this bridge or culvert did not pass over any stream, and thus section 39-1206, *supra*, is not applicable.

There is no evidence, or presumption, that the road had ever been designated as a county road. This is a prerequisite to its maintenance at the expense of the county. *State v. Steffen*, 121 Neb. 39.

At common law a county was not liable for damages for injuries arising out of defects in highways or bridges. *Woods v. County Commissioners of Colfax County*, 10 Neb. 552; *Dawson County Irrigation Co. v. Dawson County*, 106 Neb. 367.

In the large mass of statutes relating to public roads we find no statute that makes a county under township organization liable for damages arising out of a status and circumstances such as these. Nor has the diligence of counsel resulted in the production of any. Under the township organization act of 1895 (Laws 1895, ch. 28) counties governed by that act were relieved from the duty "to construct, maintain and keep in repair ordinary highways and culverts" and from liability growing out of negligence in that respect. *Goes v. Gage County*, 67 Neb. 616. While later acts have amended the township organization statutes, we do not find that these amendments aid appellant.

The judgment of the district court is

AFFIRMED.

ROSE, J., dissents.

PAINE, J., dissenting.

I respectfully dissent from the main opinion in this case, which holds that counties under township organization are not liable for damages for injuries growing out of defects in a road or bridge unless the particular road has been designated as a county road, or unless the bridge passes over a stream.

The effect of this holding is to entirely relieve a county from liability; no matter how grossly negligent its officers or employees may have been, I presume it is held to be an illustration of *damnum absque injuria*.

However, the first fundamental legal principle set out in Broom's Legal Maxims, 131, is, "There is no wrong without a remedy," and my sense of justice abhors a situation which allows innocent travelers to be negligently injured by officers of a county and the county to escape scot-free.

This decision is founded upon many precedents, and it is now the duty of this court to refuse to blindly follow precedents which lead to injustice.

The sole question in this case is: Can a suit be maintained against a county under township organization for injuries sustained by reason of a negligent defect in a public highway, which was neither a state or federal highway, nor a part of the "county road system?"

What are the facts in this case? The plaintiff sues Butler county and Frank Dvorak, a road contractor, for $10,000 for damages for an accident, which occurred about as follows: The evidence discloses that the plaintiff, a man 28 years old, residing in Omaha, was going in his own automobile to visit some friends at Loma, Butler county, on July 11, 1931, at about 9 p. m.; and while on a main, well-traveled country road leading off from highway No. 16, and driving at about 15 miles an hour, the front end of the Whippet coach plunged down to the bottom of a hole reaching entirely across the road, where a culvert had been removed and no barricades erected, and the same was entirely unguarded in any manner whatever. Plaintiff had a deep gash above his eye, another on his left cheek, a laceration at the corner of his mouth, contusion and abrasion over both patellas, other abrasions over his forehead, and was laid up about four months with the injuries. He went to Brainard, Nebraska, where a doctor sewed up the cuts and administered first aid.

Butler county is under township organization, and the country road on which this hole was left open and unguarded had not been designated a county road nor a state highway. However, exhibit A shows that the board of supervisors of Butler county had undertaken to improve this road at the expense of the county, and publicly gave notice to contractors to submit bids upon a new construction of this road, making it much higher and much wider, and involving the excavation and hauling of approximately 65,400 cubic yards of earth. In the mem-

orandum it was stated that the *county,* not the township, would build all bridges and culverts. Frank Dvorak, one of the defendants, secured this road contract from Butler county for $11,172, and gave a bond to the county for the performance of the same, and was engaged in such work. In the answer filed by Frank Dvorak it was set out that a swale, or watercourse, crossed the highway at the place where the accident occurred, and that the accident was caused by the removal of a culvert or bridge over said swale or watercourse. The supervisor of that district of Butler county ordered Joseph Janek, the highway patrolman, to take out the old culvert, which left a wide open hole clear across the road. This was done on July 10, the day before the accident. The new bridge had already been put in by the county just south of this, and the old bridge taken out had been 16 feet long across the road, and about 8 feet wide, and the hole left was about 3 feet to 3½ feet deep, and the testimony was that no barricades, lights, or signs were put up on either side of this hole, and the hole was left open and unguarded.

This court held in *Goes v. Gage County,* 67 Neb. 616, decided in 1903, that counties under township organization were relieved from liability in reference to ordinary highways, etc. Then followed *Wilson v. Ulysses Township,* 72 Neb. 807, in 1904, holding that the rule of common-law liability applied to townships as well as counties, and a township was not liable for persons injured by defects in public highways within such township. Then followed an accident very similar to the case at bar, where a culvert was taken out by the township officers in the daytime, and left without barricades or signs or lights, in Yale township, Valley county, and that night an automobile plunged in, with damage to the occupants, and it was held that the exemption of a township extended to its officers, servants, and agents, in *Pester v. Holmes,* 109 Neb. 603.

The circle was now complete, and for damages by plunging into a great hole left in a highway by taking

out a culvert and leaving it unmarked and unguarded, neither the county, nor the township, nor the township's employees who were guilty of the negligence, were held to be in any wise liable. However, it does not appear that the question of the construction of all of the particular statutes relating thereto was before the court, or considered by it, in these cases.

The holding in the last above case, decided in 1923, is the more remarkable because since 1911 the duty of maintaining and keeping in repair the roads of counties under township organization has been placed upon the county, except as to certain state highways.

Chapter 116, Laws 1911, created a county highway commissioner, and said, each county "may" appoint a county highway commissioner, "and the county board shall have exclusive control, government and supervision of all the roads of the county." This statute was amended in 1917, providing that the county board could designate certain roads known as county roads, which should be maintained at the expense of the county. The statute was changed to make it mandatory that each county "shall" appoint a county highway commissioner, who should have general control, government and supervision of all the public roads and bridges in the county, under direction of the county board. Minor amendments were made to this statute in 1919 and 1923.

Section 39-101, Comp. St. 1929, provides: "The county board has a general supervision over the public roads of the county, with power to establish and maintain them as herein provided, and to see that the laws in relation to them are carried into effect."

Section 39-1312, Comp. St. 1929, provides that it shall be the duty of the county highway commissioner to have all traveled earth roads dragged regularly.

The county highway commissioner, with the county board, under section 39-1302, Comp. St. 1929, has the exclusive control, government, and supervision of all public roads and bridges in the county, except state high-

ways.

To give further legality to the acts of the county, there is now in force a law which clears up any question on the subject. Chapter 80, Laws 1931, now permits counties under township organization to execute written contracts for the construction, repair, or alteration of roads within any township therein, and while this was only approved May 2, 1931, yet Butler county was proceeding to do this very thing at the time of this accident. This chapter has now become section 39-1901, Comp. St. Supp. 1933, and this new law is referred to in *Cheney v. County Board of Supervisors*, 123 Neb. 624. This law is an evidence of a public policy to vest in counties adequate and ample powers enabling prompt and necessary action to be taken in all matters of maintenance and repair of public highways, and shows that it does not refer simply to the roads designated as county roads.

Back in 1879 it was provided that all section lines were public roads, and the county board was given the sole power to open and work them. Comp. St. 1929, sec. 39-145. No such power was given to the township.

The law relating to township road funds was amended in 1923 to provide that the expense of altering or changing a township road should be paid out of the general fund of the county. Comp. St. 1929, sec. 39-1201.

In *Bomark v. County of Harlan*, No. 25882, released July 19, 1927, Commissioner Sandall had before him a very similar case, in which a township road had been permitted to wash and waste away, creating a ditch in the highway. I realize that the opinion of the commission is- the law only in the particular case decided, yet this opinion is of value in its discussion of the very point at issue in the case at bar. The district judge had instructed a verdict for the defendant county at the close of the plaintiff's evidence, and the commission reversed the trial court. A rehearing was allowed to the division of commissioners consisting of Wilson, Thompson, and Wolff, and upon December 23, 1927, a short opinion was

written by Commissioner Wilson, in which Commissioner Sandall's opinion was reconsidered, he having ceased to be a member of the commission. Commissioner Wilson wrote an additional opinion, saying that an erroneous construction had been placed upon section 2803, Comp. St. 1922, now section 39-1302, Comp. St. 1929, the county attorney of Harlan county contending that it meant that the county highway commissioner should only have control of public roads and bridges which were under the authority of the county board, instead of all roads, and Judge Wilson says that in their opinion the highway commissioner has the general control, government, and supervision of all public roads and bridges in the county, and that, after considering the briefs and listening to the oral arguments on rehearing, they adhere to the former opinion.

In 1889 the legislature passed chapter 7, the title of which read: "An act relating to highways and bridges and liabilities of counties for not keeping the same in repair." The complete act consisted of four sections, and section 1 provided: "That whenever any highway or bridge in any county in this state shall be out of repair or unsafe for travel, any three citizens or taxpayers in the state may notify the county commissioners of the commissioner district, within which the said road or bridge is situated, *or if the county be under township organization,* the supervisor of the town in which it is situated, in writing, setting forth a description of the road or bridge and the defects therein.

"Section 2. It shall then be the duty of the said commissioner of the said county or counties, within twenty-four (24) hours after service of said notice, to commence to make suitable repairs to said highway or bridge and to place it in a safe condition for travel."

Section 3 provided how the matter should be handled when the bridge was on the line between two counties, and section 4 has now become section 39-832, Comp. St. 1929, and this section reads: "If special damage happens

to any person, his team, carriage or other property by means of insufficiency, or want of repairs of a highway or bridge, which the county or counties are liable to keep in repair, the person sustaining the damage may recover in a case against the county, and if damages accrue in consequence of the insufficiency or want of repair of a road or bridge, erected and maintained by two or more counties, the action can be brought against all of the counties liable for the repairs of the same; and damages and costs shall be paid by the counties in proportion as they are liable for the repairs, provided, however, such action is commenced *within thirty days* of the time of the injury or damage occurring."

In the construction of a statute, in order to determine the true intention of the legislature, the particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning of any of its parts. Each clause will be illuminated by those which are cognate to it, and each provision should be read in the light of the whole. The rule stated is one of primary importance, and well established by authorities. Black, Interpretation of Laws (2d ed.) 317.

Applying these rules to the consideration of the four sections of chapter 7, Laws 1889, it follows that the terms employed in all four sections must be taken as expressing the same thought. Section 1 clearly sets out that the act applied to counties under township organization, and if that is true, then section 4 of the act, in using the word "county," must cover, as section 1 specifically does, counties under township organization. The subsequent repeal of any of these provisions or sections would not bring about a change in the construction of any section unrepealed, so that, as the original act covered counties under township organization, therefore, section 4 thereof must still so apply, and cover Butler county without question.

Section 13, art. I of our Bill of Rights, provides: "All courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law, and justice administered without denial or delay."

But it has often been the plight of an injured person, who has been taken to a hospital and remained for some time, that they did not seek legal advice until after 30 days' limit provided above had expired. In *Madden v. Lancaster County*, 12 C. C. A. 566, 65 Fed. 188, it was held by the federal court that, as this provision gives a right of action, it is constitutional to limit the time within which it may be exercised, and that an action must be brought under this act within 30 days from the occurrence giving rise to the right, and not from the time when the whole consequent damage was suffered.

In *Swaney v. Gage County*, 64 Neb. 627, the plaintiff suffered damages on a defective bridge upon a public highway in Gage county upon November 6, 1899, and as the action was not commenced for 52 days after that date, it was held that the time of beginning the action could not be extended, even where the person was so severely injured that he became insane, and was legally *non compos mentis* from the 6th day of November, the date of the accident, until December 20, and in which case he commenced the action within eight days after recovering his sanity. In deciding that the suit could not be maintained, which was begun on the 52d day after the accident, this court said: "It must have been the intention of the legislature, in thus limiting the time for the commencement of actions under the section on which this suit is based, to require such suits to be prosecuted while the incidents were still fresh in the minds of every one connected therewith."

Let us now consider another phase of this question. Section 39-832, Comp. St. 1929, says the county must respond in damages to a person injured if the accident

occurs for want of repairs upon a highway or bridge which the county is *"liable* to keep in repair." The word "liable" is "a word with a common and ordinary signification. It has been variously defined as meaning accountable for or chargeable with." 36 C. J. 1132. Liability to repair means responsibility to repair.

It will be seen that, in the manner in which these terms are used, "liable to keep in repair" is related to the exact time of the accident, and if it is liable at that time, liability is established. Therefore, the right to recover depends upon the relation of the county to the defective road or bridge at the moment of the accident. This liability must be construed as a liability in fact, and may result from a *bona fide* contract liability, or from a liability declared by statute apart from contract.

The county is just as much liable for an act which it is authorized to contract to perform as it is for an act where its liability is expressly declared to be for a failure to perform an act. The county is charged with the duty of rebuilding this road and this bridge, and, to carry out that duty, Butler county let a contract to the lowest responsible bidder. The county is "liable" on its own contract to pay this contractor for rebuilding this road in which the defect occurred.

Where the proper authorities engage in grading or paving a highway which the county is liable to keep in repair, and do not close the same, but permit the continuance of public travel thereon, and damages accrue in consequence of the insufficiency or want of repair of the portion of the public highway over which the continuance of such travel is permitted, the person sustaining the same may recover in a proper case against the county. *King v. Douglas County*, 114 Neb. 477.

"A county cannot evade statutory liability for damages arising out of an obstruction in a highway by a plea that the repair of such highway at the point where the injury occurred has been delegated to another." *Frickel v. Lancaster County*, 115 Neb. 506.

"The liability of the county arises, not alone from the *constructing*, but as well from the *maintaining* of a bridge." *Higgins v. Garfield County*, 107 Neb. 482.

"One who is injured by reason of a defective bridge while riding in a private vehicle may recover from a county otherwise liable, notwithstanding the negligence of the driver, which may have contributed to produce the injury, the injured party being free from negligence and having no authority or control over the driver." *Loso v. Lancaster County*, 77 Neb. 466.

I have tried to trace the history of this law and of the decisions of this court, and show what an incongruous situation has arisen, whereby this court has repeatedly required counties to defend against such damage actions, and to pay judgments secured against them, whenever that particular county happened to be under the commissioner system, and has repeatedly upheld instructed verdicts in favor of one of the 27 counties still under the township system. Why should such an inconsistency be longer tolerated? I have tried to show that, at its inception in 1889, the act, of which section 39-832, Comp. St. 1929, was a part, specifically applied to counties under township organization, and it is clearly an error to allow counties so organized to now escape a liability which all other counties must face.

In the case at bar, the evidence shows that Butler county had built the new bridge over this swale, which was completed to take the place of this old one which had been taken out by the county, leaving a death trap, with no barricades, lights, or warning, on a well-traveled country road, which was being widened and raised under a contract made by the county, to be paid for by the county. The county should be required to defend this suit.